GEORGE G. MAGOWN AND OTHERS *against* FRANCIS S. SINCLAIR AND ANOTHER.

Defendants being sued as makers of certain bills of exchange, answered that the bills had been paid by the proceeds of certain shipments of corn. On a motion to refer on the ground that the trial would involve the examination of the account of sales of such shipments, it appearing that the gross and net proceeds of the sales was admitted by both parties, and that the only question in dispute was, whether the proceeds of the sales had been received by the agents of the plaintiffs or of the defendants; *Held*, that the trial would not involve the examination of the account of sales, and that a compulsory reference should not be ordered.

The plaintiffs having moved for a reference, on an affidavit stating that the trial would involve the examination of the account of sales of large shipments of corn sold to as many as twelve different persons, the defendants answered in an affidavit setting out the account, and alleging that it was not disputed by either party; *Held*, that the pleadings not putting in issue the amount of the proceeds of the sale, and the plaintiffs not having denied the allegations in the defendants' affidavit, they must be regarded as having admitted the correctness of the account, and that the trial would not involve the examination of the items of it.

The term " examination of a long account," as used in the Revised Statutes and the Code, does not mean the examination of it to ascertain the result or effect of it, but the proof by testimony of the correctness of the items composing it.

The practice of referring causes involving the examination of long accounts traced to its origin, the circumstances under which it came into use in the colony of New York explained and the extent to which it was then and has subsequently been allowed, examined.

A compulsory reference should not be ordered where the trial will require the decision of a difficult question of law, even if it would otherwise be proper.

APPEAL by defendants from an order of this court made at special term directing a compulsory reference. The action was brought against the defendants as makers of three several bills of exchange to recover a balance due.

The answer claimed that the drafts had been paid in full, and alleged that they had been drawn against certain shipments of corn by the defendants, the bills of lading for which had been indorsed over to the plaintiffs as security for the payment of the

drafts, with power to the plaintiffs to sell the corn and apply the proceeds to the payment of the drafts; that before the drafts became due, the plaintiffs had received and sold the corn for more than enough to pay the drafts in full, and that there was in the hands of the plaintiffs a balance due the defendants, for which they demanded judgment as a counter-claim. For a reply to the defendants' counter-claim, the plaintiffs denied that they had sold or received the proceeds of the corn, but alleged that this had been done by the defendants.

On the motion for a reference, the plaintiffs' attorney made an affidavit stating that the trial of the issues would involve the examination of " the accounts of the sale of several large shipments of corn set up in the answer, which sales were made at various times between May 28th and July 9th, 1872, and to at least twelve different persons or firms." Attached to this affidavit was a copy of the account, which included a very large number of items. In opposition to this, the defendants' attorney made an affidavit, stating that there was no dispute between the parties as to the sale of the corn, the gross amount of proceeds, or the amount of expense attending the same, and that the real contest in the case arose from the fact that the corn had been sold and the proceeds received by Campbell & Co., grain brokers, at Liverpool, who had become insolvent before turning over all the proceeds, and that the question was simply whether they were acting as the agents of the plaintiffs or of the defendants, and that, owing to the peculiar facts of the case (which were stated in the affidavit), the question of law involved was a difficult and delicate one.

*W. Gleason*, for appellants.

*E. T. Rice*, for respondents.

DALY, Chief Justice.—This is not a case for a reference. To authorize a compulsory reference, the account must not only be a long one, but it must be directly involved. It must be the immediate object of the suit, or the ground of the defense, and not arise collaterally or incidentally. This was held

by the Court of Appeals in *Kain* v. *Delano* (11 Ab. Pr. N. S. 29). The affidavit of the plaintiffs states that the defense set up will involve the examination of a long account, including, among other items, the accounts of the sale of several large shipments of corn, set up in the answer, which sales were made at various times, and to at least twelve different persons or firms. The defendants' affidavit states that the three bills of exchange, upon which the action is brought, were drawn against the proceeds of certain cargoes of corn shipped by the defendants to Liverpool, the defendants delivering to the plaintiffs the bills of lading for the cargoes as security for the payment of the bills, upon the delivery of the bills by the defendants to the plaintiffs; that the cargoes were sold by the plaintiffs or their agents in Liverpool, realizing more than enough to pay the bills of exchange; that the plaintiffs delivered the bills of lading to Campbell & Co., who were grain brokers in Liverpool, and took from them an agreement that they would pay over the proceeds of the several cargoes to the plaintiffs or their correspondents, to an amount sufficient to satisfy the bills; that Campbell & Co. afterwards became insolvent, without having paid over the proceeds to the plaintiffs' correspondent in England; that the principal question, therefore, in the case is, whether Campbell & Co. were the agents of the plaintiffs or the defendants, the determination of which will settle whether the loss is to be borne by the plaintiffs or the defendants; and that there *is no dispute between the parties as to the sale of the grain in Liverpool, the gross amount of the proceeds, and the expenses attending the same*, which last statement is not denied by the plaintiffs, and is, in my judgment, decisive upon the question of reference.

The answer avers that the corn was sold in Liverpool by the plaintiffs, *through their agents* or *brokers*, and states the exact amount in pounds, shillings, and pence that each of the three shipments brought. I do not understand that the fact of the sale of the corn, and the amount which it brought, is at all put in issue by the plaintiffs' reply. By their reply they simply deny that *they* sold it and received the proceeds *through their brokers, agents*, or *otherwise;* and aver that it

was sold and the proceeds received by the defendants *through their agents or brokers at Liverpool;* which I understand as conceding the sale and the amount or proceeds of it. I assume this not only from the inspection of the pleading, but because if the plaintiffs did not so understand the effect of their reply to the counter-claim, but meant, on the contrary, to require the defendants to prove every item in the account of sales, they would certainly, after the defendants' attorney's affidavit that the sale, the gross amount of the proceeds and the expenses, were not in dispute, have made an affidavit contradicting his affidavit in this respect, to show that the items in the account of sales were disputed, or a sufficiently large number of them, to require that there should be a reference. The plaintiffs did aver in their moving affidavit that the trial of the counter-claim would involve the examination of a long account, including the accounts of the sale of several large shipments of corn, &c.; but when this was circumstantially denied by the affidavit of the defendants' attorney, it then became incumbent upon the plaintiffs to show why or how this examination would become necessary, which was the precise point determined in *Kain* v. *Delano, supra.* This account of sales did form a part of the case, and may be said to have been involved, as one of the many meanings of that word, is "connected with;" but it was not directly involved, unless it was at issue and had to be proved, and this did not clearly appear from the pleadings or the moving affidavit, which was simply that the examination of a long account was involved. For all that appears in the affidavit, the plaintiffs' attorney may have regarded the account as so involved, because it formed a part of the case which would necessarily be put in, read, and in that respect examined, though neither the items composing it, nor the amount of it, was disputed. This is not what is meant in the language of the statute of 1788, in the Revised Statutes and the Code by the "examination of a long account;" but it is the investigation and proof by testimony of the account, where the whole of it, or a large number of the items are disputed. Where an account is directly involved in the trial, a reference is ordered from the intrinsic difficulty of carrying on such an examination before a

jury, where the testimony in respect to charges and credits may be conflicting, or the inquiry complicated or intricate, making it exceedingly difficult for each of the jurors to keep in his mind every item and the testimony relating to it, so as to enable the jury collectively to find a verdict which shall be accurate and in accordance with the proof. For this reason, such an investigation is sent to a referee, who, in addition to having the witnesses before him, takes their testimony down in writing, and after the evidence is given, has ample time to go over it carefully in respect to every disputed item; to examine and scrutinize accounts that may have been delivered, and letters, receipts, bills, and other papers that have passed between the parties, and in this way to arrive at a conclusion with a degree of care and deliberation that is impossible upon a jury trial.

This is what is meant in the statute by the investigation or examination of a long account, and it is to cases of this description that references should be confined, for the intention is not and never was to take away the trial by jury and institute a reference, except where the investigation before a jury is impracticable, or at least exceedingly difficult and unsatisfactory, as it is where there is a long or complicated account. The practice came into use when New York was a colony under the Dutch, and was continued after the conquest of the colony by the English as a more satisfactory mode of procedure for the investigation of matters of account than upon a trial by a jury. The Dutch, as was the usage in Amsterdam, referred the settlement of all such matters of account to three persons called arbitrators, and like some other Dutch usages or laws, this was continued for many years after New York became an English colony, these three persons being sometimes called arbitrators and sometimes referees (Introduction to E. D. Smith's Reports, XLIV; 2 Rec. of Mayor's Court; Rec. of Mayors, vols. 2 to 7). The Charter of Liberties and Privileges of 1683, however, provided that all trials should be by the verdict of twelve men (Appendix No. II to 2 Rev. Laws of 1813), which virtually abolished this mode of procedure, and there was no way then by which a matter involving an account could be tried at common law, except by an action of account. Baron

Gilbert, writing at a much later period, says that in an action of *indebitatus assumpsit*, "no evidence can be given of an account current, because such an examination would be tedious upon issues, and and therefore upon (in) this case an action of account is provided, wherein there is judgment *quod computet* before a master or auditor, where the whole matters, upon both sides, are examined, stated, and balanced " (Gilbert on Evidence, p. 192; and see also Trials per Pais, p. 401; *Nasworthy* v. *Wyldman*, 1 Mod. 42; *Lincoln* v. *Parr*, 2 Keb. 781; *Scott* v. *Macintosh*, 2 Camp. 238). But the action of account was intricate in its course of procedure, dilatory, expensive, and moreover did not reach all cases of accounts; so that a bill in equity for an accounting was preferable. This action therefore fell into disuse, and the practice arose in England of bringing *indebitatus assumpsit* in place of it, the parties usually consenting where the account was obviously too complicated to be tried by a jury, to refer it as in equity, and finally the usage became so general that it was at last held, disregarding the old cases, that *indebitatus assumpsit* would lie, no matter how numerous the items in the account, the practical effect of which compelled parties to consent to refer where the accounts were long or complicated (*Tomkins* v. *Willsheare*, 5 Taunt. 431; *Arnold* v. *Webb*, Id. note).

In the colony of New York the same result took place at an earlier period. It was found not only that this action would not reach all cases of accounts, but also that the course of procedure in it could not be adapted to a trial by jury, which was obligatory in the colony, as I have said, by the Charter of Liberties and Privileges, for in this ancient action there were two judgments : *first*, that the defendant account, or as it was called, *quod computet*, upon which the court assigned two auditors, who were usually officers of the court, who examined the parties under oath respecting the account, a practice which did not exist in other common law actions, and there might be a new pleading before the auditors of matter in discharge of the defendant's liability, which, if the plaintiff denied, an issue was created, which the auditors certified to the court, by whom a *venire* was awarded to try it, and if that issue was found for the

plaintiff, or if, by the examination before the auditors, any amount was found to be due by the defendant, there was a second judgment, that he pay to the plaintiff the sum found by the auditors to be due (*Godfrey* v. *Saunders*, 3 Wils. 73, 88 to 118 ; 4 Anne, ch. 16, § 27; Wyche's Practice, 14 ; Coke Lit. 90, b. ; *Williams* v. *Lee*, 1 Mod. 42). Such a procedure as this was wholly inapplicable to the trial of the issues of fact joined in an action by a jury, and as the remedy in equity was then but imperfectly understood in the colony, the action of *assumpsit* was resorted to as a necessity, and matters of account appear to have been tried in that form, before a jury, down to 1768, when the investigation of accounts before juries proved to be so inconvenient and unsatisfactory that a statute was passed in that year establishing our present mode of trial before referees.

No better exposition can be given of what was intended by this enactment than by quoting the preamble of this statute, which shows the nature of the mischief and the remedy that was intended to be applied. It is in these words : " Whereas, instead of the ancient action of account, suits are of late brought in *assumpsit,* whereby the business of unraveling long and intricate actions of accounts, most proper for the deliberation and examination of auditors, is now cast upon jurors, who at the bar are more disadvantageously circumstanced for such services, and this burden upon jurors is greatly increased since the law made for permitting discounts in support of a plea of payment, so that, by change of the law and practice above mentioned, the suits of merchants and others upon long accounts are exposed to erroneous decisions, and jurors perplexed and rendered more liable to attaints, and by the vast time necessarily consumed in such trials other causes are delayed and the general course of justice is greatly obstructed." The statute then provides that if, in a suit in the Supreme Court, it shall appear probable that the trial will require the *examination of a long account* on one side or the other, the court may, without the consent of the parties, at its discretion, refer the cause to referees, who shall be three persons nominated by the court, &c. (2 Van Schaick Laws of New York, pp. 517, 607, 643), which was, in fact, go-

ing back to the old Dutch practice. This act was continued by successive enactments until the American Revolution, and was made applicable to inferior courts, and having expired during the Revolution, its provisions were renewed, almost in the same words, by the act for the amendment of the law passed in 1788 (2 Jones, 2; Varick's Laws of New York, p. 270, § 2), which was continued in the Revised Laws, and afterwards embodied, with some modification, in the Revised Statutes.

I have given this brief account of the way in which references came to be adopted in this State in actions requiring the examination of long accounts, and what they were intended to remedy, because it has hitherto been but imperfectly understood, Judge Denio, in *Van Marter* v. *Hotchkiss* (1 Keyes, 586), where the point was directly involved, not being able to say whether references of this kind existed or not before the adoption of the State Constitution of 1778, and because, of late years, the courts have rather facilitated this mode of trial, instead of strictly confining it to cases where it is indispensably necessary—for it greatly protracts litigation, is dilatory, expensive, and moreover liable to abuses to which a trial by jury is not ordinarily subject.

In the present case, the question to be tried upon the pleadings, as I understand them, is, whether Campbell & Co., who have failed to pay over the proceeds of the sales, were the agents of the plaintiffs or of the defendants. If they were the agents of the plaintiffs, then their accounts of sales, which, it was admitted upon the argument of the appeal, was received by the defendants through the plaintiffs, would be conclusive upon the plaintiffs; and if they were not, but were the agents of the defendants, then it is wholly immaterial in the case what amount the whole of the shipments sold for.

But there is a further reason why a reference in this case should not have been ordered. Neither by the Code, nor by the law as it existed before it, is a party entitled to a reference, even though a long account has to be examined, if the investigation will also require the decision of a difficult question of law. In this case the amount involved is about $20,000, and enough has been disclosed upon this motion to show that the

question whether a loss to that large amount is to fall upon the defendants or upon the plaintiffs is one that may, upon the facts, be very difficult to determine as a question of law. In view, therefore, of the nature of the question and the magnitude of the amount to the defendants, they should not be compelled, because the plaintiffs are willing or wish it, to go before a referee for the decision of such a question; but, on the contrary, where they desire it, ought to have, in the decision of it, the benefit of the knowledge and experience of a judge of the court and the united opinion of the twelve minds that constitute a jury (*Wheeler* v. *Falconer*, 7 Robt. 45; *Goodyear* v. *Brooks*, 4 Id. 682; *Dewey* v. *Field*, 18 How. Pr. 439; *Ives* v. *Vandewater*, 1 Id. 168; *Shaw* v. *Ayres*, 4 Cow. 52; *Lusher* v. *Walton*, 1 Cai. 150; *Law* v. *Hallet*, 3 Id. 82; *Adams* v. *Bayles*, 2 Johns. R. 374; *Salisbury* v. *Scott*, 6 Id. 329; Code, § 291).

There have been conflicting decisions upon the point whether an order directing a reference was appealable. In *Turner* v. *Taylor* (2 Daly, 282), we held that it was, because, if decided erroneously, it took away a substantial right—the right of trial by jury—and the question is now set at rest by the decision of the Court of Appeals, that such an order can be reviewed upon appeal (*Kain* v. *Delano*, 11 Abb. Pr. N. S. 29; *Walsh* v. *Darragh*, 52 N. Y. R. 590).

The order should therefore be reversed.

LOEW and LARREMORE, JJ., concurred.

Order reversed.