EDWARD M. STECK, Respondent, *v.* THE COLORADO FUEL AND
IRON COMPANY, Appellant.

The question as to whether an action is referable without consent of both
parties is to be determined from the complaint alone. If the cause of
action there set forth is not referable without consent and the same is put
in issue, defendant is entitled to trial by jury, and the action is not made
referable by anything set up in the answer. (ANDREWS, Ch. J., FINCH
and O'BRIEN, JJ., dissenting.)

Where, therefore, the complaint in an action set forth a cause of action on
contract and this was put in issue by the answer, which also set up
counterclaims consisting of long accounts, *held* (ANDREWS, Ch. J.,
FINCH and O'BRIEN, JJ., dissenting), that an order of reference of all
the issues, granted on motion of plaintiff against the objection of
defendant, was error.

The history of legislation upon the subject of set-off and references given.
*Hall* v. *U. S. R. Co.* (14 Wkly. Dig. 48; affd., 88 N. Y. 655), distinguished.

(Argued January 29, 1894; decided April 24, 1894.)

APPEAL from order of the General Term of the Supreme
Court in the first judicial department, made January 12, 1894,
which affirmed an order of Special Term, which granted a
motion for a reference and appointed a referee.

The facts, so far as material, are stated in the prevailing
opinion.

*James Stikeman* for appellant. Trial by referee is an excep-
tional mode of judicial procedure, and when it is sought to
coerce a suitor into a submission to it the burden is upon the
party applying for a reference to show that the case is within
the excepted class. (*Cassidy* v. *McFarland*, 139 N. Y. 201.)
It is not enough to justify a compulsory reference that the
case may involve the examination of a long account. It must
be shown that the trial will involve such examination.
(*Thayer* v. *McNaughton*, 117 N. Y. 111; *Spence* v. *Simis*,
137 id. 616.) The counterclaims in no case involved an
account. (*Untermyer* v. *Beinhauer*, 105 N. Y. 521.) The
referable quality of an action must be determined from the

complaint and a counterclaim set up in the answer cannot change it. (Laws of 1848, chap. 379, § 226.)

*William C. Camman* for respondent. The question whether the examination of a long account is necessarily involved in the action is not appealable to this court. (*Welsh* v. *Danagh*, 52 N. Y. 590; *Martin* v. *W. H. Co.*, 70 id. 101; *Harrington* v. *Bruce*, 84 id. 103.) The facts before the court below fully warranted the finding that the trial of the issues will require the examination of a long account within the meaning of section 1013 of the Code. (*Cassidy* v. *McFarland*, 139 N. Y. 206.) The examination of the account is directly in issue and will be necessary upon the trial. (*Thayer* v. *McNaughton*, 117 N. Y. 111; *Spence* v. *Simis*, 137 id. 616; *Camp* v. *Ingersoll*, 86 id. 433; *Claflin* v. *Drake*, 38 Hun, 144; *C. Ins. Co.* v. *P. Ins. Co.*, 8 N. Y. Supp. 524.) The referable quality of the action depends upon the issues presented by the complaint and answer. (*Maryott* v. *Thayer*, 7 J. & S. 417; *Thayer* v. *McNaughton*, 117 N. Y. 111.)

Earl, J. The plaintiff's cause of action, as alleged in his complaint, is for his salary as general manager of the defendant at a stipulated price for the quarter of the year ending December 31, 1892. The verified answer of the defendant gainsays and puts in issue all the material allegations of the complaint, and alleges counterclaims consisting of long accounts. It is conceded that if the plaintiff's cause of action had been merely put in issue by the answer, the action could not have been referred without the consent of both parties, and that either party demanding it would have been entitled to a jury trial. But the contention of the plaintiff is that because the counterclaims involve long accounts, therefore, the action may be compulsorily referred and all the issues therein tried before a referee. The question is thus presented again to this court whether, where the cause of action alleged in the complaint is not referable, the action can be made referable by anything which appears in the answer. We have

several times answered this question in the negative, and we should do so again.

As it is sought to distinguish this case from our prior decisions, to which I will hereafter refer, and as we differ among ourselves, it becomes important, more particularly than ever before, to examine the grounds of those decisions, and to give somewhat fully the reasons for our present conclusion.

It was provided in the State Constitution of 1777 that "trial by jury in all cases in which it has heretofore been used in the colony of New York shall be established and remain inviolate forever," and that provision is contained in all the revisions of our Constitution since that time. We have, therefore, to determine whether such an action as this could, prior to 1777, have been referred to a referee for trial without the consent of the parties. References of actions pending in the common-law courts for trial before referees were not known to the common law, and, so far as they are now authorized, they are particularly provided for by statutes. Under the Dutch rule in the colony of New York actions involving long accounts could be referred to arbitrators or referees, and such a reference was a very common mode of trial during that period. But it was not pleasing to the English colonists, who had received the trial by jury from their ancestors, a priceless heritage secured by Magna Charta, and hence, some years after the capitulation of the Dutch to the English in 1683, by the Charter of Liberties and Privileges granted by the Duke of York to the inhabitants of New York, it was provided "that all trials shall be by the verdict of twelve men." (See Charter, appendix No. 2, 2 Laws of 1813.) Thereafter all actions in the common-law courts of the colony were triable before juries, except the action of account, and that was applicable only to a limited class of cases involving the examination and taking of accounts. It was one of the most difficult, dilatory and expensive actions known to the law, and was very rarely resorted to. (*Rawson* v. *Rawson*, 3 Hill, 59; *Magown* v. *Sinclair*, 5 Daly, 63.) The difficulties attending the prosecution of such an action were such that the practice

became general for merchants and others having long accounts
to enforce their collection by actions of assumpsit, which
were always then triable by jury.    But the embarrassments
attending the trial of such actions by jury were such that,
December 31, 1768, an act (2 Van Schaick's Laws of New
York, 517) was passed, with a preamble as follows : "Whereas,
instead of the ancient action of account, suits are of late, for
the sake of holding to bail, and to avoid the wager of law,
frequently brought in assumpsit, whereby the business of
unraveling long and intricate accounts, most proper for the
deliberate examination of auditors, is now cast upon jurors,
who at the bar are more disadvantageously circumstanced for
such services ; and this burden upon jurors is greatly increased
since the laws made for permitting discounts in support of a
plea of payment, so that by the change of the law and the
practice above mentioned, the suits of merchants and others
upon long accounts are exposed to erroneous decisions, and
jurors perplexed and rendered more liable to attaints ; and by
the vast time necessarily consumed in such trials, other causes
are delayed and the general course of justice greatly obstructed.
Be it, therefore, enacted, etc., that whenever it shall appear
probable in any cause depending in the Supreme Court of
Judicature of this colony (other than such as shall be brought
by or against executors or administrators) that the trial of the
same will require the examination of a long account, either on
one side or the other, the said court is hereby authorized,
with or without the consent of parties, to refer such cause by
rule, to be made at discretion, to referees,    *    *    *    and if
the report or award of the referees, or of the major part of
them, shall be confirmed by the said court, and any sum be
thereby found for the plaintiff, judgment shall be entered for
the same, with a *relicta verificatione*, as by confession with
costs, if by law the plaintiff would have recovered costs, had
a verdict passed in the same cause for the sum so reported to
be due ; but if, after payment pleaded, any sum shall be reported
to be due to the defendant, and the award be confirmed, he
shall have judgment and recover his costs.    *    *    *    And when

such referees shall report that nothing is due from the defendant, and the report be confirmed, then judgment shall be entered as by *non pross,* and the defendant shall recover his costs, to be taxed, and such judgment be a perpetual bar." That was the first act in the colony of New York authorizing a reference in any common-law action.   It was undoubtedly a tentative act, and it expired by its own limitation on the first day of January, 1771.   It was revived and re-enacted by the act of February 16, 1771, and was to continue in force until February 1, 1780.   It is evident that the people of this state parted with the trial by jury in any case with great hesitation and reluctance, as the temporary statute authorizing references was not re-enacted in 1780, and there was no such statute in this state from that date until 1788, when it was again substantially reinstated.   It was in force prior to and at the time of the adoption of the Constitution of 1777, and the question for our determination is whether, under it, such an action as this could have been referred.   And I think it is very clear that it could not have been.   The preamble to the act may be read for the purpose of ascertaining its meaning and scope, and from that it clearly appears that the lawmakers were then dealing with actions brought by merchants and others upon long accounts ; that it was such actions only that were intended to be provided for, and that such actions only were intended to be sent to referees for trial.   The provision is that an action could be referred when the trial would "require an examination of a long account, either upon the one side or the other," and, therefore, it may be conceded that when the trial would involve the examination of a long account, under the practice as it then existed, upon either side, a reference could be ordered.   But when I have made this concession little progress has been made.   We must determine under what circumstances a long account could appear in the answer of the defendant, so as to make the action referable when a long account was not set forth in the complaint, and that makes it necessary for us to examine the ancient law of set-off.

Set-offs in common-law actions were unknown to the common

law. If a defendant had accounts or claims against the plaintiff he could enforce them only by an action · commenced by him against the plaintiff. Even if the plaintiff's accounts or claims were undisputed, and the defendant had accounts or claims against the plaintiff far in excess of those made against him, he could not offset them, but was obliged to enforce them by an independent action. That practice was not changed in England until the acts 2 and 8 of George the Second, whereby set-offs were first authorized there. (3 Black. Com. 305 ; Barbour on Set-off, 24.) They were authorized several years earlier in the colony of New York by the act, chapter 281 of the Laws of 1714. (Vol. 1, New York Colonial Laws, Livingston & Smith edition, 106.) In that act it was provided, "that if any two or more dealing together be indebted to each other upon bonds, bills, bargains, promises, accounts or the like, and one of them commence an action in any court of this colony, if the defendant cannot gainsay the deed, bargain or assumption upon which he is sued, it shall be lawful for such defendant to plead payment of all or any part of the debt or sum demanded, giving notice in writing with the said plea of what he will insist upon at the trial for his discharge, and give any bond, bill, receipt, account or bargain so given notice of in evidence, and if it shall happen that the defendant hath fully paid or satisfied the debt or sum demanded, the jury shall find for the defendant, and judgment shall be entered that the plaintiff shall take nothing by his writ and shall pay the costs ; and if it shall appear that any part of the sum demanded is paid, then so much as is found to be paid shall be discounted and the plaintiff shall have judgment for the residue only, with costs of suit ; but if it appear to the jury that the plaintiff is overpaid, then they shall give in their verdict for the defendant, and withal certify to the court how much they find the plaintiff to be indebted, or in arrear to the defendant more than will answer the debt or sum demanded ; and the sum or sums so certified shall be recorded with the verdict, and shall be deemed as a debt of record," etc. That was the only law upon the subject of set-

off enacted in the colony previous to the Constitution of 1777. At that time, and, I believe, at all times prior to the Code practice, notice of matter in defense could not be given except in connection with some plea. The lawyers of that period could not conceive of a defense except under some plea, and at no time in this state, prior to 1801, could there be more than one plea to a declaration. The pleadings on both sides were required to be such as to present for trial a single issue, and a pleading tendering several issues was bad for duplicity. (1 Chitt. Pl. 259, 264, 592.) Under the act of 1714 the defendant could give notice of his set-off only with the plea of payment, and with no other plea, and under his plea of payment he could prove no payment except that accomplished by his set-off. There could not be two distinct issues, one upon the payment and the other upon the set-off, and under the plea of payment, with notice of set-off, the only matter that could be litigated was the set-off. A plea of payment, as well as a plea or notice of set-off, always admitted the plaintiff's claim. They were pleas of confession and avoidance. (Jacobs' Law Dic. and Tomlins' Law Dic., tit. Set-off; 2 Parsons on Con. 734; 2 Black. Com. 305.) A set-off is defined to be " a mode of defense whereby the defendant acknowledges the justice of the plaintiff's demand on the one hand, but on the other sets up a demand of his own to counterbalance it, either in whole or in part." Blackstone, at the page cited, says : " To this head may also be referred the practice of what is called a set-off, whereby the defendant acknowledges the justice of the plaintiff's demand on the one hand; but on the other sets up a demand of his own to counterbalance that of the plaintiff, either in the whole or in part, as if the plaintiff sues for ten pounds due on a note of hand, the defendant may set off nine pounds due to himself for merchandise sold to the plaintiff, and in case he pleads such set-off, must pay the remaining balance into court." In 2 Parsons on Contracts, page 734, it is said : " Set-off has been well defined as a mode of defense by which the defendant acknowledges the justice of the plaintiff's demand, but sets up a

demand of his own against the plaintiff to counterbalance it in whole or in part." And again, at page 741, it is said: "The essential difference between recoupment or reduction on the one hand, and set-off on the other, is that in set-off the ground taken by the defendant is that he may owe the plaintiff what he claims, but a part or the whole of the debt is paid in reason and justice by a distinct and unconnected debt which the plaintiff owes him."

So, under the act of 1714, it was not possible for the defendant to give notice of his set-off and at the same time dispute the plaintiff's claim. He could not have done so, even if the statute had not expressly provided that he could give notice of his set-off only in case he was not able to gainsay the plaintiff's claim. His plea of payment with notice of set-off necessarily confessed the claim. If the words "cannot gainsay," etc., did not condition the right of set-off, then they were absolutely without meaning, and no purpose for their use can be plausibly suggested or even conceived. Besides this express limitation, the whole framework of the statute shows that the right of set-off was limited to cases where the plaintiff's claim was not in dispute, as the set-off was to be allowed — not against the claim or debt of the plaintiff found or established or actually existing — but against "the debt or sum demanded." These words quoted are not found in the English Statutes of Set-off, but are found in all the statutes upon the subject in this state until the Revised Statutes, when they, as well as the words "cannot gainsay," are for the first time omitted. The statute of 1714 was re-enacted, slightly changed, February 27, 1788, in the act "for the amendment of the law and the better advancement of justice," and again the defendant, in case he could not gainsay the plaintiff's claim, was allowed, with the plea of payment, to give notice of set-off. By the act, chapter 90 of the Laws of 1801, a general practice act under the same title, it was provided that the defendant, in case he could not gainsay the plaintiff's claim, could plead the general issue instead of payment as before, and with that give notice of set-off. It was also provided in that act, for the first time

in this state, that " it shall be lawful for any defendant or tenant in any action in any court of record to plead the general issue and to give any special matter in evidence which, if pleaded, would be a bar to such action, giving notice with the said plea of the matter or several matters so intended to be given in evidence ; " and also, " that it shall be lawful for any defendant or tenant in any action, or for any plaintiff in replevin, in any court of record, with the leave of the same court, to plead as many several matters as he shall think necessary for his defense."     All these provisions were carried into the Revised Laws of 1813, including the provision allowing the defendant, if he could not gainsay the plaintiff's claim, with the plea of the general issue to give notice of his set-off ; and so the law remained until the Revised Statutes. Under these acts of 1801 and 1813 it was held that the notice of set-off could only accompany the general issue and no other plea, as before it could only accompany the plea of payment     (*Alsop* v. *Caines*, 10 John. 396 ; *Caines* v. *Brisban*, 13 id. 9 ; *Root* v. *Taylor*, 20 id. 137 ; *Wheeler* v. *Raymond*, 5 Cowen, 231.)

Under these acts, what was meant by the words " if the defendant cannot gainsay " the plaintiff's claim ?     They are not found in any statute of set-off in England or elsewhere in this country.     Did the lawmakers in 1801 and 1813 mean to change the prior practice which had obtained when the notice of set-off was allowed with the plea of payment ?     Did they mean to deprive these words, which before had a meaning, of all meaning ?     Did they mean to permit the defendant to gainsay the plaintiff's claim when he was unable to do it ?     I believe they did not.     They had not yet reached the stage of law reform which allows several actions to be tried in one. They were evidently not convinced of the wisdom and feasibility of allowing the defendant to litigate the plaintiff's claim and his own independent claims at the same time and in the same action ; and I do not believe that such a practice ever obtained in this state prior to the Revised Statutes.     The lawmakers allowed the notice of set-off to go with the general

issue because under that, as under the plea of payment, the defendant could show payment. The general issue was a mere formal plea to sustain or give place for the notice of set-off, and not to authorize the defendant to litigate or dispute the plaintiff's claim upon the trial. I have not overlooked the cases of *Gordon* v. *Bowne* (2 Johnson, 150); *Burgess* v. *Tucker* (5 id. 105); *O'Callaghan* v. *Sawyer* (Id. 118); *Tuttle* v. *Beebe* (8 id. 152); *Root* v. *Taylor* (20 id. 137); *Bridge* v. *Johnson* (5 Wendell, 342). In none of these cases was it held that the defendant could avail himself of his set-off upon the trial and at the same time dispute and litigate the plaintiff's claim. The only case which has come to my attention which gives any countenance whatever to such a practice is that of *Gordon* v. *Bowne*, where the question upon the plaintiff's claim was one of law upon undisputed facts, and the decision there proceeded upon the ground that the set-off was not proper; and it was never held in any reported case that the words "cannot gainsay," etc., did not have the meaning and force which I have attributed to them. But whether I am mistaken or not as to the meaning of these words when the notice of set-off accompanied the general issue, is of no importance, as I cannot be mistaken as to their meaning when the notice of set-off was required to accompany the plea of payment only.

It was provided in 2 George II, chapter 22, section 13, that "where there are mutual debts between the plaintiff and defendant, * * * one debt may be set against the other, and such matter may be given in evidence upon the general issue, or pleaded in bar, as the nature of the case shall require, so as at the time of his pleading the general issue, where any such debt of the defendant is intended to be insisted on in evidence, notice shall be given of the particular sum or debt so intended to be insisted on, and upon what account it became due, or otherwise such matter shall not be allowed in evidence upon the general issue." This clause was made perpetual by the act, 8 George II, chapter 24, section 4, and it having been, doubted whether mutual debts of a different

nature could be set against each other, that doubt was removed by section 5, which authorized the set-off, notwithstanding the debts were deemed in law to be of a different nature; and it was provided that when the debt due to the defendant was less than that due from him, he must, on pleading such set-off, pay the remaining balance into court. Under the English statutes it was held that notice of set-off could be given only with the general issue. (1 Chitt. Pl. 606.) As I have before stated, there was no provision in the English statutes allowing the defendant to give notice of his set-off only in case he was not able to gainsay the plaintiff's claim; and some years before the passage of these acts, by the statutes of 4 and 5 Anne, it was provided, as afterward in this state in the acts of 1801 and 1813, that the defendant could, with the leave of the court, plead as many matters to the declaration of the plaintiff as he should think necessary for his defense. In drafting the act of 1801, which was carried into the act of 1813, the lawmakers here had before them the English statutes; and why did they continue the provision that the defendant could give notice of his set-off only in case he could not dispute the plaintiff's claim, if it was to have no meaning and effect, and if the statutes here were to have the same operation as the English statutes?

This review of the statutes shows clearly that prior to 1777, and for many years thereafter, a defendant was not permitted to set off his claims against the plaintiff's claims, except he admitted them. The provision for set-offs took this limited form to meet the obvious injustice of a case where the defendant was not able to gainsay the plaintiff's claims, but yet had set-offs sufficient in whole or in part to pay and discharge them; and thus it is clear that prior to that period there was no possible way of depriving the plaintiff of a trial by jury in case his cause of action was gainsaid.

There can, therefore, be absolutely no ground for saying that these accounts in this answer which disputes and gainsays the plaintiff's claim, could prior to 1777 have been set up as a defense to the action, or that prior to that time there was

any possible way for depriving the parties of a jury trial upon the issues formed upon the plaintiff's cause of action.

It would not be useful now to examine more particularly the statutes as to set-offs and references enacted since 1777, as there has been no power in the legislature since that time to curtail the right of trial by jury. It could not do so by changing the form of pleadings, or by allowing set-offs and counterclaims where they could not have been interposed prior to that time. In the acts of 1788, 1801 and 1813, and in the Revised Statutes and the Code, the power to refer actions is continued in substantially the same language as that used in the act of 1768; and in the Revised Statutes, for the first time, as I believe, was the defendant enabled to plead or give notice of a set-off, and at the same time put in issue and contest upon the trial the cause of action alleged in the declaration. I can safely assert that prior to the Revised Statutes there is no record in any book of any cause compulsorily referred where the complaint stated a disputed cause of action not involving the examination of a long account. I have examined all the old works on practice, and all the earlier reports, and have found no trace or hint of a practice that would authorize a reference in such a case as this; and since the adoption of the Revised Statutes and the introduction of the Code practice I am confident there is no reported decision of any court of this state which sanctions the reference of an action merely because the answer involves a long account, when, upon the cause of action alleged in the complaint standing by itself, either party could demand a jury trial, except the decision in the court below in this case, and in the cases where, upon appeals to this court, the decisions of the lower courts were reversed.

If it should be asserted that the right of trial by jury had, by the practice and usage of the courts, become curtailed prior to any of the modern revisions of the Constitution so as to give the meaning of the guaranty as to jury trial a more limited scope than it had in the Constitution of 1777, I answer that the assertion is unfounded.

I will now call attention to some decisions in this court. In *Townsend* v. *Hendricks* (40 How. Pr. R. 143) the action was to recover back certain bonds and money obtained from the plaintiff by the fraudulent representations of the defendant, and to that action the defendant interposed a counterclaim requiring the examination of a long account. That case was literally within the law as to references, as it did involve the examination of a long account upon one side, and yet, after a careful consideration of the case, in the first opinion written by the late Judge Rapallo in this court, it was held that the action was not referable. In that opinion it was said: "It is further contended that the defendants have, by interposing a counterclaim consisting of a long account, rendered the examination of such account necessary. It does not follow that the action can be referred for that reason. If the action is from its nature not referable, the answer cannot make it so. Should the counterclaim ever require examination, a reference can be ordered as to it after trial of the issues." There the cause of action alleged in the complaint was such that prior to 1777 a long account could not have appeared in the answer, and hence the action could not have been referred, and both parties would have had the right to a jury trial, and hence no subsequent legislation could take away that right. In *Welsh* v. *Darragh* (52 N. Y. 590) the action was upon contract for the sale and delivery of various articles of merchandise, and the cause of action alleged in the complaint would require the examination of a long account. The answer set up fraud in the transaction, and claimed damages by way of recoupment or counterclaim; and there, Chief Judge Church writing the opinion, again announced the doctrine, that the character of the action is determined by the complaint, and if that allege a cause of action upon contract involving a long account, the action is referable, and that although the answer sets up fraud in the transaction and claims damages by way of recoupment or counterclaim, that does not change the character of the action, or render it non-referable; and there the order of reference was

affirmed, as the complaint made the action referable under the act of 1768. The question again came before this court in *Untermyer* v. *Beinhauer* (105 N. Y. 521). There the cause of action alleged in the complaint was for the recovery of unliquidated damages for breach of contract, and in no sense involved an account. The answer contained a counterclaim, which required the examination of a long account, and the court again held, Judge RAPALLO writing the opinion, that as the cause of action alleged in the complaint was not referable, it could not be made so by the counterclaim. In the opinion he referred to the language above quoted, which he used in the case of *Townsend* v. *Hendricks.* Why was not that action referable? It involved the examination of a long account on one side, and thus the case was literally within the language of the act of 1768. The answer is very plain. It was not an action upon a long account; the cause of action alleged in the complaint was not referable; it was put in issue, and, therefore, although the defendant set up a counterclaim containing a long account, as he had the right to do, the action was not thereby made referable, and the defendant did not lose his right to demand a jury trial. When he put in issue the plaintiff's cause of action, if for no other reason, a case was made which could not have been referred under the act of 1768. In *Cassidy* v. *McFarland* (139 N. Y. 201, 205), MAYNARD, J., said: "It is sufficient, if the fact clearly appears from the verified pleadings, that the examination of a long account will be involved in the trial of the issues. The referable quality of the action must alone be determined from the complaint." In New Jersey the law authorizes the reference of "all actions in which matters of account are in controversy," and in *Gopsil* v. *Hervey* (34 N. J. Law, 435) it is said "that it is the character of the plaintiff's claim which determines whether the case is referable." In *Hall* v. *United States Reflector Co.* (14 N. Y. Week. Dig. 48; 95 N. Y. 648, and 96 id. 629) the plaintiff's cause of action was expressly

admitted and the litigation was over matters alleged in the defendant's answer, which, in any view of the case, involved long accounts.

The construction I give to the acts of 1714 and 1768 is neither narrow nor technical. It is dictated by the spirit of the times in which those acts were in force, when there was greater reverence for trial by jury than exists now, is required by their letter and spirit, leads to no absurd or inconvenient results, and is, as I believe, in harmony with the established practice of the courts for more than one hundred and twenty-five years. I would speak with less confidence if one authority entitled to any weight in this court holding otherwise could be found.

The meaning of the words, "require the examination of a long account, either on the one side or the other," and of their analogues in the more recent statutes, has been frequently under consideration in the courts, and the words have not always been literally construed. They have required construction and their literal meaning has frequently been limited, as is shown by decisions of this court above cited, and by many other decisions.

To say that a cause of action is referable in its nature when it has not of itself a single referable quality, and which cannot, on account of anything pertaining to it, be referred, is a most inaccurate use of language, and it is to me inconceivable that Judges RAPALLO, CHURCH and MAYNARD, in the opinions above cited, used the expression as meaning a cause of action which could only be made referable by something appearing in the answer.

This discussion, therefore, comes to this : If the plaintiff brings his action upon a long account, then it is such as was referable prior to 1777, and as the examination of a long account is required on his side the defendant cannot defeat a reference by anything he may set up in his answer by virtue of the statutes allowing set-offs and counterclaims. If the plaintiff's cause of action be upon contract for a definite sum of money, or for damages, *ex contractu*, and his cause of action

be not gainsaid by the defendant, and the defendant sets up a counterclaim which requires the examination of a long account, then the case is such as would have been referable under the act of 1768. But if in such actions the plaintiff's cause of action be disputed, then a case is presented, which, prior to 1777, gave the parties the absolute right to jury trial, and that right cannot be taken away or destroyed by anything which the defendant may set up in his answer.

These views furnish a plain rule for the guidance of courts, resting upon a solid basis, and I think it would be most unwise to countenance any other practice. According to the contention now made on behalf of the plaintiff, for the purpose of distinguishing this case from that of *Untermyer* v. *Beinhauer*, if the plaintiff brings an action to recover $1,000, payable to him by virtue of a contract, the defendant may dispute his claim, and set up a counterclaim which requires the examination of a long account, and then the action becomes referable. But if he sues upon a contract, possibly the same contract, seeking to recover $1,000, unliquidated damages for a breach thereof, and his claim is disputed by the defendant, who also sets up a counterclaim requiring the examination of a long account, the action is not referable. Such a distinction is not founded in reason, and no rule of convenience or of public policy requires that it should be adopted. The following authorities may also be referred to as sustaining the conclusion I have reached : 20 Am. and Eng. En. 670 ; *Williams* v. *Allen* (2 Hun, 377) ; *Wood* v. *Hope* (2 Abb. N. C. 186) ; *Verplanck* v. *Kendall* (45 Sup. Ct. R. 525) ; *Gregory* v. *Seaman* (51 id. 517). This conclusion preserves to the parties the constitutional right to trial by jury of the issues upon a non-referable cause of action alleged in the complaint, and a right to the reference of the long accounts set up in the answer, and thus all the statutes have full force and effect, and the decisions of the courts are harmonized and rendered consistent.

The orders of the General and Special Terms should, therefore be reversed, and motion for reference denied, with costs in all the courts.

Andrews, Ch. J. (dissenting).   This appeal involves the question of the power of the court under the State Constitution and laws to order a compulsory reference of the action. The action is on contract and is referable in its nature.   But having regard alone to the cause of action set forth in the complaint, it was not the subject of a compulsory reference for the reason that no long account was involved.   The action was to recover four months salary alleged to be due and unpaid to the plaintiff under a contract of employment at an annual salary of six thousand dollars.   The defendant answered denying the complaint, and in addition pleaded several defenses by way of counterclaim arising on matters of account, and the answer concluded by prayer for judgment that the plaintiff account for the moneys mentioned in the second and third counterclaims, and that the defendant recover the sum which might be found due from the plaintiff to the defendant on such accounting.   The plaintiff replied denying the counterclaims, and then, upon the pleadings and proceedings and upon affidavit, moved for an order of reference, on the ground, in substance, that, upon the facts disclosed, it appeared that the trial of the issue on the third counterclaim in the answer would involve the examination of a long account.   The motion was opposed by the defendant, but was granted, and an order of reference was made, from which the defendant appealed to the General Term of the first department, which affirmed the order, and from the order of affirmance this appeal is taken.   It was competent for the judge who granted the order to find, upon the facts presented, that the trial of the issue on the third counterclaim would involve the examination of a long account, and that on the trial none of the issues would require the decision of any difficult questions of law, and this finding, having been affirmed by the General Term, is not reviewable here.

The appeal, therefore, presents the question whether a compulsory reference may be directed in an action on contract to recover stipulated payments, upon it being made to appear that, although no long account will be involved in maintain-

ing the plaintiff's cause of action, nevertheless such account will be involved and will be litigated on the issue raised by the counterclaim in the answer. The question presented in another form is whether a cause of action, referable in its nature, but which cannot be referred of itself alone, because not involving the examination of a long account, may be referred against the protest of either party, if a counterclaim, also arising upon contract, is interposed, which will involve the examination of a long account.

If the power to order a compulsory reference in this case depends alone on section 1013 of the Code of Civil Procedure, there can be no doubt that the court had jurisdiction to make the order. The language of the section is explicit and unambiguous. It authorizes a compulsory reference where the trial of an action will involve an examination of a long account " on either side," and there are no difficult questions of law. It needs no gloss or argument to show that the case in hand is within the express language of the section. There is a long account on the side of the defendant, arising on its counterclaim, and the legal questions involved are of the simplest character. The words " on either side " in section 1013 are not new as applied to compulsory references. Compulsory references were first authorized by the colonial statute of 1768. (Van Schaick's Laws, vol. 2, p. 517.) The act is entitled " An act for the better determination of personal actions depending on accounts." The first section authorizes a compulsory reference whenever it shall appear probable " in any case depending in the Supreme Court of Judicature of this colony (other than such as shall be brought by or against executors or administrators) that the trial of the same will require the examination of a long account either on the one side or the other." The law authorizing compulsory references has been re-enacted in the successive revisions of the laws since the organization of the state government, and in all of them the language of the colonial statute of 1768, that a reference may be ordered when it shall appear that the trial of an action will involve the examination of a long

account " either on the one side or the other," has been in substance retained and continued, so that at no time since 1768 have these words not been incorporated in the law relating to compulsory references. (Laws of 1788, ch. 46 ; Laws of 1801, ch. 90 ; Laws of 1808, ch. 1 ; 1 Rev. Laws 1813, ch. 56 ; 1 Rev. St. 384, sec. 39.)

But the claim is made that, notwithstanding the broad and unqualified language of the statute, the constitutional right of trial by jury stands in the way of a compulsory reference of actions on contract, where the plaintiff's debt or demand is put in issue by the answer, and the necessity for the examination of a long account only arises upon a set-off or counter-claim interposed by the defendant. It is insisted that the words " on either side " in the statutes regulating compulsory reference are, by the operation of the Constitution, to be construed with this implied limitation. The Constitution of 1777 ordained that " trial by jury in all cases in which it hath heretofore been used in the colony of New York shall be established and remain inviolate forever," and the same provision in substance is to be found in each of the subsequent State Constitutions. Under the Dutch rule all actions were triable by the court, and trial by jury was unknown. The question whether actions were referable never arose. There was no need of references except for the information of the court. The argument is that the right of a defendant during the colonial period to interpose a set-off, depended upon and was limited by the Statute of Set-off enacted by the colony of New York in 1714 (Van Schaick's Laws, p. 95), and which continued in force until the Revolution, and that that statute confined the right of set-off to cases where the defendant admitted on the record the plaintiff's claim, and did not authorize a defendant to put the plaintiff's claim in issue and at the same time to interpose a set-off. It is insisted, therefore, that the words " either on the one side or on the other " in the act of 1768, authorizing compulsory references, must be construed as referring only to cases where a long account was connected with the plaintiff's claim or arose on the defend-

ant's set-off interposed in connection with an admission of the demand of the plaintiff.    The conclusion is, therefore, deduced that the power of compulsory reference at the time of the adoption of the Constitution of 1777, not having been extended to cases of set-off, connected with a denial of the plaintiff's claim, the right of trial by jury in such a case then existed and was forever preserved by the Constitution.    This argument and conclusion, even if founded upon correct premises, is very technical and unsatisfactory in its results, but it also proceeds, as I think, upon a misapprehension of the true meaning of the constitutional provision.    But the argument puts upon the statute of 1714 a construction contrary to the practical construction uniformly applied by the courts to statutes of like character.    The clause in the statute of 1714 (Van Schaick's Laws, p. 93), authorizing set-offs, that " if the defendant cannot gainsay the deed, bargain or assumption upon which he is sued, it shall be lawful for such defendant to plead payment of all or any part of the debt or sum demanded, giving notice in writing with the said plea upon what he will insist upon at the trial for his discharge, and give any bond, bill, receipt, account or bargain so given notice of in evidence," is claimed to limit the right of set-off under the statute to cases where the defendant admits and does not put in issue the plaintiff's demand.    But the words " cannot gainsay the deed, bargain or assumption upon which he is sued," and the subsequent words, were inserted simply to declare a rule of pleading and to enable a defendant who had no defense to the plaintiff's claim, to prove, under a plea of payment, a set-off, of which notice had been given, and these words were not intended to confine the right of set-off to cases where the defendant affirmatively admits the plaintiff's demand.    There are no negative words. Proof of disconnected demands would not support the plea of payment except by statute.    If there might originally have been a question as to the construction of the statute in this respect, the construction put by the courts upon similar words have removed any doubt.    The Statute of Set-off of 1714 and

the act of 1768, authorizing compulsory references, were, in substance, re-enacted and incorporated into the " Act for the amendment of the law and the better advancement of justice," of February 27, 1788, chapter 46 (2 Greenleaf's Laws, 102) ; also in the act of the same title, chapter 90 of the Laws of 1801 (1 Webster's Laws, p. 347) ; also in the Laws of 1813 (1 Rev. Laws, ch. 56, p. 513). In each of these statutes the section relating to set-offs contains the same words found in the statute of 1714, " if the defendant or defendants cannot gainsay the deed, bargain or assumption upon which he, she or they is or are sued, it shall be lawful," etc. Numerous cases are found in the reports of this state, commencing from an early period after the formation of the state government, arising under these statutes, where, in connection with the general issue, the defendant gave notice of set-off. The set-off was in some cases allowed and in some cases disallowed, but in none of them was it suggested by court or counsel that the defendant, in order to avail himself of the right of set-off, must admit the plaintiff's demand. On the contrary, not only was the plaintiff's claim put in issue in all these cases, but in some of them it was litigated on the trial. (*Gordon* v. *Bowne*, 2 Jo. 150 ; *Burgess* v. *Tucker*, 5 id. 105 ; *O'Callaghan* v. *Sawyer*, Id. 118 ; *Tuttle* v. *Bebee*, 8 id. 152 ; *Root* v. *Taylor*, 20 id. 137 ; *Bridge* v. *Johnson*, 5 Wend. 342.) These cases refute the claim that, prior to the Revised Statutes, a defendant could not contest by his pleading, and upon the trial, the plaintiff's claim, and at the same time insist upon a set-off in case he failed to establish his defense to the plaintiff's cause of action. It cannot be supposed that the judges and lawyers of that time were unacquainted with the practice of the colonial courts, or that they overlooked so easy an answer to the defense of set-off as that furnished by the words " if the defendant cannot gainsay the deed, bargain or assumption upon which he is sued," if they have the construction now claimed for them. It is noticeable that in the case of *Root* v. *Taylor*, Ch. J. SPENCER quotes the statute of 1813, and included in the quotation are the words, " if the defendant cannot gainsay," etc.,

and in that case, which was assumpsit for goods sold and delivered, the defendant had pleaded the general issue with notice of set-off. The rule that a defendant may at the same time deny the plaintiff's claim and give notice of set-off, and thereby put the defendant to proof of his demand, prevailed in England under the English Statutes of Set-off. (2 Geo. II, ch. 22, sec. 13, and 8 Geo. II, ch. 24, sec. 4.) *Harington* v. *Macmorris* (5 Taunt. 228) was an action for money had and received, money lent, etc. The defendant pleaded the general issue with notice of set-off, the particulars of which were furnished. The jury found against the set-off. The plaintiff relied for the proof of his claim on the admission of the notice of set-off, and had a verdict. The verdict was set aside on the ground that the admission in the notice of set-off was not available to the plaintiff to establish his demand. Lord MANSFIELD said : " It is every day's practice that the defendant's language in one plea cannot be used to disprove another plea, as in the familiar instance I have given of trespass, and justification pleaded, when the justification would certainly, if admissible, prove the act in case the reason of justification fails. Therefore, the particulars of the set-off must be incorporated with the notice of set-off and cannot be given in evidence to prove the plaintiff's demand on the issue of non-assumpsit." The quotation from BLACKSTONE (vol. 3, p. 304) is quite consistent with the opinion of Lord MANSFIELD. The commentator is there speaking of the rule relating to tender and the payment of money into court to mitigate damages and costs, and he says in substance, that, under a plea of set-off (which, standing alone, necessarily admits the plaintiff's claim), it is neceesary, if the set-off does not equal the plaintiff's debt, that the defendant should pay the balance into court to have the benefit of tender in mitigation of further costs, etc. The rule that the general issue with notice of special matter, puts in issue the plaintiff's cause of action, is elementary. (1 Chit. Pleadings, 478 ; *Vaughan* v. *Havens*, 8 Jo. 109.) It has been frequently applied by other courts in this country in case of set-off. (*Price* v. *Combs*, **12**

N. J. L. 189; *Morgan* v. *Boone*, 1 J. J. Marsh. 585.) There are no records showing the practical construction placed by the colonial courts upon the statute of 1714 upon the point now in question, but the English Statutes of Set-off were enacted nearly fifty years before the organization of our state government under which the practice prevailed of permitting a defendant to deny the plaintiff's claim in connection with notice or plea of set-off. It is presumable that the same practice was followed in the colony, and the practice of the state courts, following the English practice under statutes similar to that of 1714, makes this presumption almost a certainty. The English decisions, says Chief Justice KENT in *Gordon* v. *Bowne*, on the construction of the English Statute of Set-off, "are perfectly in point as to the construction of our act," and Statutes of Set-off, from the time of their enactment, have been "liberally expounded to advance justice and prevent circuity of action." (THOMPSON, J., in *Tuttle* v. *Bebee*, 8 Jo. 152.) The argument against the power to order a compulsory reference in this case based upon the assumption that when the Constitution of 1777 was adopted, no long account could be litigated arising on a set-off, except where the defendant admitted the plaintiff's claim, and that the act of 1768 authorizing compulsory references did not apply in a case like the present one, where the plaintiff's claim is denied, proceeds upon false premises and cannot be maintained.

But there is, I think, another conclusive answer to the objection based on the Constitution. The words in the Constitution of 1777, "trial by jury in all cases in which it hath heretofore been used in the colony of New York," shall be established and remain inviolable forever," were intended to preserve the right of jury trial in the classes of cases where trial by jury before as of right existed. In expounding this provision the principle which governed the colonial practice permitting compulsory references, is to be applied. Cases of the same class and governed by the same principle of public policy as those within the act of 1768, may be referred consistently with the constitutional provision, although the exact

case in hand was not within the terms of that statute. The policy upon which the statute of 1768 was enacted is recited in the preamble, which, after referring to the disuse of the action of account and to the law of 1714 permitting discounts in support of the plea of payment, proceeds to declare: " So that by the change in the law and practice above mentioned, the suits of merchants and others upon long accounts are exposed to erroneous decisions and jurors perplexed and rendered more liable to attaints, and by the vast time necessarily consumed on such trials, other causes are delayed and the general course of justice greatly obstructed; it is enacted, therefore," etc. It cannot be supposed that the Constitution of 1777 intended to prevent a reference of cases of the same general class as those specified in the act of 1768, and as to which the same considerations of public policy applied, even although, by reason of the rules of pleading and procedure prevailing in the colony, a set-off in a particular case involving the examination of a long account was not permitted. The principle established by the colonial legislation was that action on contract involving litigations of long accounts " on either side " should be referred for trial to referees, to relieve jurors from perplexity and to prevent the obstruction of justice. This legislative power was not abrogated by the Constitution. It would be a narrow and injurious construction of the constitutional provision that unless you are able to point out the precise case under colonial laws, a compulsory reference cannot be had. The act of 1768 excepted from its operation suits " brought by or against executors or administrators." This exception was expressly abrogated in the act of 1788 and the subsequent statutes of the state. But this abrogation of the exception was inoperative and in violation of the Constitution, if you say that no compulsory reference can be authorized in any case not referable under the colonial laws, although the case is within the principle and policy upon which these laws were based. If the Constitution restricts, as is claimed, the power of compulsory reference to the exact cases specified in the colonial act of 1768, then I perceive no escape from the conclusion that whenever now an

executor or administrator is a party to an action, it cannot be compulsorily referred, although the action may be on contract and involves a long account on either or both sides. The present case is an action on contract for debt. The set-off was also a matter of account. It was properly pleaded. The statute of set-off permits the defendant to contest the plaintiff's claim, and, at the same time, to insist upon a set-off. The trial of the set-off involves the examination of a long account. The statute permits a compulsory reference in such case, and no constitutional right, I am persuaded, stands in the way of its enforcement.

But it is said that the question involved in this case has been decided adversely to the power exercised, in three cases in this court, viz.: *Townsend* v. *Hendricks* (40 How. Pr. 143), *Welsh* v. *Darragh* (52 N. Y. 590) and *Untermeyer* v. *Beinhauer* (105 id. 521). This is a plain misapprehension. It is said in those cases that the referable character of an action is to be determined by the complaint. This was an accurate expression, having reference to the cases in which it was used and the sense intended. Bearing in mind two well-settled principles established by the decisions, first, that actions *ex delicto* were not the subject of compulsory reference, either in the colony of New York or afterwards (*Johnson* v. *Parmely*, 17 Jo. 129; *Green* v. *Patchen*, 13 Wend. 293; *Dederick's Admrs.* v. *Richley*, 19 id. 108); second, that set-offs are not allowed in actions for unliquidated damages, although arising on contract, " as for not delivering goods according to contract" (1 Chitty Pleadings, 572; *Duncan* v. *Lyon*, 3 Jo. Ch. 351; *Hepburn* v. *Hoag*, 6 Cow. 614), the principle upon which the decisions in this court proceeded in the cases referred to, is readily ascertained. *Townsend* v. *Hendricks* was an action for damages for false representations. The court, after referring to the pleadings, said: " The action must, therefore, be held to be one founded in tort, and not referable against the will of either party." *Welsh* v. *Darragh* was an action on a contract for the sale and delivery of merchandise sold by the plaintiff to the defendant. The defend-

ant, among other things, set up in his answer fraud and deceit in the sale of certain other merchandise not included in the complaint. A reference having been ordered on the application of the plaintiff, the defendant appealed from the order. He resisted the reference on the ground that the issue of fraud raised by the answer was not referable, seeking to apply to the case the rule that actions of tort are not the subject of compulsory reference. This court affirmed the order of reference, and in its opinion first stated that the action being on contract the case was referable in its nature. The court then considered the claim of the defendant, that the issue of fraud raised by the answer prevented the order of reference, and, deciding against this construction, said : " If the action is a referable one, the answer cannot make it non-referable." Having disposed of these questions, it proceeded to consider whether, upon the facts, a long account was involved in the plaintiff's cause of action, and, reaching a conclusion that there was, affirmed the order. There is no hint in the opinion of the doctrine now contended for, that in an action upon contract a compulsory reference may not be ordered, where the examination of a long account will become necessary on the trial of a counterclaim arising on contract, unless the plaintiff's cause of action involves the examination of a long account, or the plaintiff's claim is admitted. *Untermeyer* v. *Beinhauer* was an action to recover unliquidated damages for the breach by a builder of a building contract, and the court held that such an action was never referable against the will of either party, saying : " It was simply an action for unliquidated damages for the breach of a contract and in no sense involved any account." Neither of these cases sustain or tend to sustain the contention here. The case of *Kain* v. *Delano*, decided by this court and reported in 11 Abbott's Practice (N. S.), 29, was an appeal from an order of reference made on the ground that the trial of an issue raised by a counterclaim would require the examination of a long account. The plaintiff's claim consisted of but a single item, and was denied by the answer, which also set up a counterclaim. This court

reversed the order of reference on the ground that the fact upon which the order proceeded did not appear. It assumed that the order would have been justified if it had appeared that the issue on the counterclaim would require the examination of a long account. The rule here contended for is plain, simple and practical. It is consistent with the Constitution. It is in harmony with the public policy upon which statutes for compulsory references are based. The opposite rule violates the language of all statutes on the subject framed since colonial times. It is based on views so close and critical that they can be comprehended only with difficulty. It puts it in the power of a plaintiff by exaggerating his own claim, to prevent its admission by the defendant, and thereby defeat a reference of a long account arising on a counterclaim. If the order in this case is reversed, the court will, I think, reverse the practice which has prevailed in the courts of this state without question for more than a hundred years. It is the strongest confirmation of the view that the words " on either side " mean what they plainly import, that no suggestion can be found in any of the reports, so far as I can discover, of the limitation now contended for. If a practice prevailed in opposition to the natural import of the words, a trace of it would have been found. There would have been some judge or lawyer who would have queried how this could be. The distinction is between actions of a referable quality and such as are not referable by their very nature. In the one class the court may compel a reference, if on " either side " there is a long account; in the other, no reference can be compelled, however many items of damage there may be.

I think the order should be affirmed.

All concur with EARL, J., for reversal, except ANDREWS, Ch. J., FINCH and O'BRIEN, JJ., dissenting.

Orders reversed.