LILLIAN GLASS et al., Appellants, v EDWARD R. THOMPSON, Individually and as Administrative Judge of the Civil Court of the City of New York, et al., Respondents.

Second Department, January 26, 1976

*Bedford-Stuyvesant Community Legal Services Corporation (Cynthia Rollings, B. Mitchell Alter* and *June Zeitlin* of counsel), and *Community Action for Legal Services (Philip Damashek* and *Marttie L. Thompson* of counsel), for appellants.

*Louis J. Lefkowitz, Attorney-General (Robert S. Hammer* and *Samuel A. Hirshowitz* of counsel), for Edward R. Thompson and others, respondents.

SHAPIRO, J. In an action for a judgment declaring subdivision (e) of section 110 of the New York City Civil Court Act unconstitutional and for an injunction to prevent hearing officers rather than duly elected Civil Court Judges from hearing and deciding summary proceedings in the Housing Part of the Civil Court, plaintiffs appealed directly to the Court of Appeals from an order of the Supreme Court, Kings County, dated November 21, 1973, which, *inter alia,* declared the statute in question to be constitutional on its face. The Court of Appeals transferred the appeal to this court upon the ground that a direct appeal did not lie since questions other

than those involving the constitutional validity of a statutory provision were involved *(Glass v Thompson,* 36 NY2d 838).

Two issues are presented on this appeal, viz.: (1) whether the appointment of hearing officers to hear and determine summary proceedings in the Housing Part of the Civil Court of the City of New York pursuant to subdivision (e) of section 110 of the New York City Civil Court Act, violates section 15 of article VI of the New York State Constitution and (2) whether the constitutionality of the statute in question may be sustained by analogizing hearing officers *to referees to hear and determine.*

In the fall of 1973 two legal challenges were brought to the then recently created Housing Part of the Civil Court of the City of New York. The plaintiffs were represented by CALS, a community legal services office. One of these actions was the instant one, *Glass v Thompson,* commenced by two respondents in summary proceedings seeking to dispossess them from their apartments.

At Special Term, Mr. Justice McGrover held the statute constitutional on its face, but only if the parties *consented* to have the issues determined by a hearing officer. He said, in part *(Glass v Thompson,* 75 Misc 2d 824, 828): "If further developments in the summary proceedings instituted against the respective plaintiffs show that, notwithstanding the absence of consent on their part, hearing officers are assigned to hear and determine those proceedings, any constitutional objections to the manner in which section 110 is thus being implemented and administered may be raised at the time of trial and preserved for appeal. Until then, the objections raised herein by the plaintiffs are premature."[1]

---

1. The other action, entitled *Carson v Thompson* (77 Misc 2d 872), was commenced in Supreme Court, Bronx County, for the same relief, on identical papers, but with different landlords as defendants. There, Mr. Justice Brust, in considering the identical questions presented, had the benefit of Mr. Justice McGrover's opinion in this case. Judge Brust agreed that the trial before a hearing officer was analogous to a reference to determine, but disagreed with Justice McGrover's conclusion that a compulsory reference would be unconstitutional, stating in relevant part (p 873):

"The identical issues were raised recently in *Glass v. Thompson* (75 Misc 2d 824). There the court held that the provisions for trial before a hearing officer are substantially the same as proceedings before a court-appointed Referee but with that I agree. However, that court concluded that to compel the parties to have their case adjudicated by a hearing officer would violate the afore-mentioned constitutional provisions. With this conclusion, I cannot agree, for the constitutional provisions establishing the Civil Court do not mandate the form in which trials are to be held."

We agree with Mr. Justice McGrover that the statute is constitutional on its face, but we go further and hold that a reference to a hearing officer to hear and determine is proper, even in the absence of the consent of the parties, in all cases enumerated in the statute, except where a trial by jury has been properly demanded by either side.

The plaintiffs' first contention is that the appointment of hearing officers to hear and determine summary proceedings violates section 15 of article VI of the New York State Constitution.

The resolution of that contention raises no problems. Section 15 of article VI of the State Constitution, which, *inter alia,* creates the Civil Court of the City of New York, provides that the Judges thereof shall be city residents, elected by the people for 10-year terms, and that it shall have jurisdiction over summary proceedings to recover possession of real property. The constitutional provision in question creates the Civil Court and specifies the method by which its Judges are to be selected; it does not prohibit references.

The provisions relating to hearing officers of the Housing Part are contained in section 110 of the New York City Civil Court Act, which states, in relevant part:

"(e) Actions and proceedings before the housing part shall be tried before judges or hearing officers. Hearing officers shall be appointed pursuant to subdivision (f) of this section. Rules of evidence shall be applicable in actions and proceedings before the housing part. The determination of a hearing officer shall be final and shall be entered and may be appealed in the same manner as a judgment of the court; provided that the assignment of actions and proceedings to hearing officers, the conduct of the trial and the contents and filing of a hearing officer's decision, and all matters incidental to the operation of the housing part, shall be in accordance with rules jointly promulgated by the first and second departments of the appellate division for such part.

"(f) The hearing officers shall be appointed by the administrative judge from a list of persons selected annually as qualified by training, interest, experience, judicial temperament *[sic]* and knowledge of federal, state and local housing laws and programs by the advisory council for the housing part. * * *

"(i) Hearing officers shall have been admitted to the bar of the state for at least five years, two years of which shall have

been in active practice. Each hearing officer shall serve full-time for three years. Reappointment shall be at the discretion of the administrative judge and on the basis of the performance, competency and results achieved during the preceding term."

It is the use of the term "hearing officer" by the Legislature which creates one of the problems before us. If the hearing officer is not a duly elected Judge, or one appointed to fill the unexpired term of such a Judge, and as we have seen, he is not, then he must be a form of referee, for that is the only nonjudicial office which exercises judicial authority. Trials before referees are historically not triable by jury. The referee's function is to apply his expertise to the resolution of complicated issues of fact, or to apply complicated principles of law in resolving disputed facts. The jury plays no part in his deliberations (8 Carmody-Wait 2d, NY Practice, §§ 61:1, 61:42). Consent to a reference is a waiver of the right to have issues of fact determined by a jury *(Winans v Winans,* 124 NY 140; 8 Carmody-Wait 2d, NY Practice, § 61:10; also § 61:4).

Where a party has the right to a jury trial and refuses to waive it, a compulsory reference may not be ordered *(Schaffer v City Bank Farmers Trust Co.,* 244 App Div 463, affd 269 NY 336). However, the Rules of the Civil Court of the City of New York provide, in relevant part, that: "The housing part shall be presided over by a judge of the Civil Court. The presiding judge *shall* assign the individual cases to hearing officers; except that actions in equity and all actions to be tried by jury shall be tried before a judge" (22 NYCRR 2900.35 [1]; emphasis supplied).

As can be seen, this rule mandates, by the use of the word "shall", what is in effect a compulsory reference, except in equity actions and cases requiring a jury trial. However, the right to a jury trial is guaranteed to the parties in summary proceedings (Real Property Actions and Proceedings Law, § 745), but the statute specifically provides that the right to a jury trial is waived if not demanded at the time the petition is noticed to be heard. A tenant must file a jury demand with his answer to the petition or his right to a jury trial is waived *(Central Hanover Bank & Trust Co. v Rabinowitz,* 157 Misc 654). So far as this record discloses, the plaintiffs never demanded a jury trial at the time they filed their answers in the special proceedings against them and no claim is made in their briefs that a jury trial was demanded. Thus, proceeding

on the assumption that neither side demanded a trial by jury in the summary proceedings, the Special Term was correct in holding that subdivision (e) of section 110 of the New York City Civil Court Act was constitutional, as applied in their proceedings.

The hearing officers authorized by section 110 are in essence referees; that is, nonjudicial officers of the court, appointed to assist it in the performance of its judicial functions. Under the wording of subdivision (e) of section 110, a trial in a summary proceeding may be had before a Judge or a hearing officer. To deem the hearing officer not to be a referee would compel the conclusion that the statute is unconstitutional, for historically referees are the only court officers, aside from Judges, who exercise the judicial function. Thus, since the hearing officer is not a Judge of the court, elected as specified in the Constitution, he must be a referee, or lack any power whatever.

The basic question, therefore, is whether the Legislature had the power to authorize the trial of summary proceedings before a hearing officer; that is, whether it could create such a form of referee to serve in the Civil Court. A resolution of this question requires an examination of the history of the appointment of referees, of the history of summary proceedings to recover possession of real property and of the problems in enforcing the laws relating to housing which prompted the creation of the Housing Part of Civil Court.

Prior to the enactment of chapter 982 of the Laws of 1972, jurisdiction to enforce the various laws concerning compliance with housing standards, and to entertain summary proceedings to recover possession of real property, was split between the Civil and Criminal Courts of the City of New York. In enacting chapter 982, the Legislature decriminalized certain housing violations, created new civil penalties and consolidated the power to resolve all of the legal and factual questions arising in the various forms of proceedings relating to housing code enforcement and possession of leased premises into one court in order to provide a forum capable of effectuating comprehensive relief in an efficient and expeditious manner (see L 1972, ch 982, § 1).

Summary proceedings to recover possession of real property are a form of action involving an interest in real property and, as such, they are entitled to the ancient common-law right of trial by jury (see Magna Charta, § 39 [McKinney's Cons Laws of NY, Book 2, p 692]; NY Const, art I, § 2). The

summary proceeding as a form of action was created in 1820 and the right to a jury trial was confirmed at that time (L 1820, ch 194, § II). The right to trial by jury in such cases was constitutionally protected by the "heretofore used" clause of the New York State Constitution of 1894 (art I, § 2) and by the present Constitution of 1938 (NY Const, art I, § 2; 7 Carmody-Wait 2d, NY Practice, § 49:2).

The power of courts of law to direct a reference was unknown at common law but has long enjoyed statutory recognition in New York. The case of *Steck v Colorado Fuel & Iron Co.* (142 NY 236) contains an interesting discussion of the statutory history of references, from which it appears that when the Colony of New York, as New Amsterdam, was under Dutch rule, actions involving long accounts were commonly referred to arbitrators or referees. This practice was rescinded when New Amsterdam became the Colony of New York under English rule, the English, according to the court in *Steck,* having (p 238) "received the trial by jury from their ancestors, a priceless heritage secured by Magna Charta, and hence, some years after the capitulation of the Dutch to the English in 1683, by the Charter of Liberties and Privileges granted by the Duke of York to the inhabitants of New York, it was provided 'that all trials shall be by verdict of twelve men.' (See Charter, appendix No. 2, 2 Laws of 1813.)" But the "embarrassments attending the trial" of such complicated actions as long accounts by jury led to the adoption in 1768 of an act (2 Van Schaick's Laws of New York, p 517) authorizing compulsory reference of the trial of long accounts *(Steck v Colorado Fuel & Iron Co., supra,* pp 239-240). That was the first act in the Colony of New York authorizing a reference in any common-law action. It was in force as recognized law at the time of the adoption of the Constitution of 1777.

While there were occasional brief breaks in the pattern, the practice of referring matters to a referee to hear *and determine,* as contrasted with a reference to hear and *report,* grew and developed. It is now well recognized that, with but a few exceptions, almost any issue may be determined by a referee upon stipulation of the parties (CPLR 4317, subd [a] [derived from former Civ Prac Act, §§ 464, 465, without substantial change]; 8 Carmody-Wait 2d, NY Practice, § 61.5, p 458). A compulsory reference, however, may be ordered by the court only "where the trial will require the examination of a long account, including actions to foreclose mechanic's liens; or to

determine an issue of damages separately triable and not requiring a trial by jury; or where otherwise authorized by law" (CPLR 4317, subd [b]). History thus demonstrates that the purpose of references has been to remove complicated and intricate issues of fact, as in a long account, from an ordinary court and jury so that such issues may be more effectively and expeditiously determined in a hearing before a person specifically qualified by expertise and competence to deal with the area in question (76 CJS, References, §§ 1–5).

The Legislature recognized the advisability of having decision makers with special aptitude in the housing area when it enacted section 110 of the Civil Court Act. It stated: "The legislature finds that it would be beneficial to the operation of the new housing part of the civil court if the actions and proceedings were tried therein before judges or hearing officers whose background, interests and training demonstrate a broad knowledge of housing problems, current remedial programs, and a determination to secure the expeditious enforcement of state and local laws concerning the maintenance of proper housing standards; assignments of such judges or hearing officers should be for a sufficiently extensive period of time to assure expertise, continuity and the meaningful continuing jurisdiction deemed desirable and necessary to effect the state purposes herein" (L 1972, ch 982, § 1, subd [c]).

It is now well established, as we have shown, that the Legislature may, by statute, provide for compulsory references in certain types of cases. No provisions of our State Constitution are cited which have curtailed the power of the Legislature in this regard, except that compulsory references may not violate rights guaranteed to the parties by the Constitution, such as a right, where it exists, to a trial by jury (see *Schaffer v City Bank Farmers Trust Co.,* 244 App Div 463, affd 269 NY 336; *Steck v Colorado Fuel & Iron Co.,* 142 NY 236, *supra).* However, where the parties, as here, have waived a jury trial, there would seem to be no impediment to a compulsory reference to a hearing officer to hear and determine the issues, even if all of the parties to the litigation object thereto.

Plaintiffs argue that if a transfer of a case to a hearing officer be construed as a reference, it is not authorized by CPLR article 43, which governs references. We agree. However, the CPLR, while governing procedures in the Supreme Court, applies in the Civil Court only in those instances where procedure in the latter court is not otherwise regulated by

provisions of the New York City Civil Court Act (see CPLR 101).

Section 30 of article VI of the present State Constitution grants the Legislature the same power to alter and regulate the jurisdiction and proceedings in law and equity as it had theretofore exercised. As we have seen, the power to enact statutes providing for compulsory references was known in this State as far back as the rule of the Dutch over New Amsterdam. The Legislature was therefore fully empowered to designate a class of proceedings to be tried before a referee to be known as a hearing officer,[2] under procedures different in scope from those previously recognized and codified in CPLR article 43 dealing with referees.

The order appealed from should be affirmed. The statute in question (CCA, § 110, subd [e]) is constitutional and may be utilized in the trial of all actions and proceedings therein mentioned, except where a trial by jury has been properly demanded.

LATHAM, Acting P. J., MARGETT, CHRIST and TITONE, JJ., concur.

Order of the Supreme Court, Kings County, entered November 23, 1973, affirmed, insofar as appealed from, without costs or disbursements.

2. 76 CJS References (§ 1) states: "Moreover, the term used to indicate the person to whom the issue or matter is referred is not universal and, while the generally recognized term is 'referee,' as discussed infra § 3, in some jurisdictions other terms are often used in such sense without distinction, but not always. In so far as officers perform the duties of a referee, the difference in terminology may be disregarded and the term 'referee' is therefore used generically throughout this Title except where there is a difference of importance between the particular officer and a referee."