OPINION OF THE COURT
Kenneth L. Shorter, J.
This action, commenced by an unsuccessful applicant for the position of Housing Judge in the New York City Civil Court alleges that Housing Judges of the New York City Civil Court are full-fledged Judges. Plaintiff claims that the power *112 to appoint Judges is a function of the executive branch of government, yet CCA 110 (f) provides for the appointment of Housing Judges by a member of the judiciary, the Administrative Judge. This, plaintiff contends, is a violation of the doctrine of separation of powers. Plaintiff seeks a declaratory judgment declaring CCA 110 (f) unconstitutional and he also seeks injunctive relief enjoining the further appointment of Housing Judges pursuant to that law.
Plaintiff moves for summary judgment in his favor, the defendants cross-move for summary judgment, inter alia, on the ground that plaintiff lacks standing to bring this action, and the Attorney-General of the State of New York (defendant/ intervener herein pursuant to CPLR 1012 [b]) cross-moves for summary judgment on the ground the statute whose constitutionality is challenged herein is constitutional as a matter of law.
Standing was found to be insufficient, on the ground of lack of personal aggrievement, in a mandamus proceeding to compel the filling of judicial vacancies (Matter of Blaikie v Wagner, 46 Misc 2d 441) but sufficient, on a theory of general public interest, in a proceeding challenging a local law which created additional Judgeships (Matter of Levy v Makowski, 75 Misc 2d 628, affd 42 AD2d 1026, affd 33 NY2d 731). While plaintiff here may not be personally aggrieved (St. Clair v Yonkers Raceway, 13 NY2d 72) and/or the constitutionality of the challenged statute here may not be of general public interest, the standing issue must be resolved in plaintiff’s favor under the liberalized attitude toward recognition of standing announced in Boryszewski v Brydges (37 NY2d 361). There, as here, "the failure to accord such standing would be in effect to erect an impenetrable barrier to any judicial scrutiny” (Boryszewski v Brydges, supra, at p 364).
The New York City Civil Court was established by the Legislature (CCA 102), effective September 1, 1962, pursuant to the Constitution of this State (NY Const, art VI, § 15). By statute, two specific parts were established within the New York City Civil Court. One was for the determination of small claims (CCA 1802). The other was a Housing Part devoted to actions and proceedings involving the enforcement of State and local laws for the establishment and maintenance of housing standards (CCA 110).
Pursuant to CCA 110 (e), as originally enacted, actions and proceedings before the Housing Part were to be tried before *113 Judges and appointive hearing officers who were to be appointed pursuant to subdivision (f) of section 110, the subdivision at issue here (see, L 1972, ch 982). The constitutionality of section 110 (e), as originally enacted, was upheld in 1976 (Carson v Thompson, 51 AD2d 692).
The Laws of 1978 (ch 310) changed the term "hearing officer” to "hearing judge” throughout section 110. In addition, subdivision (e) was amended to provide that actions and proceedings before the Housing Part would now be tried before Civil Court Judges, acting Civil Court Judges, or Housing Judges.* The reason for the change in terminology was pointed out in the then Senate Minority Leader’s memorandum in support of the 1978 amendment: "In Glass v. Thompson, 51 A.D.2d 69, 379 N.Y.S.2d 427 (2d Dept. 1976), the Appellate Division held constitutional the employment of hearing officers to preside over non-jury trials in the Housing Court. The court suggested that their titles would not affect the nature of their office which is distinct from that of a Judge of the Civil Court. Judges of the Civil Court are elected or appointed in accordance with Article VI of the State Constitution. The court in Glass determined that attorneys with special expertise in housing matters who preside over proceedings in the Housing Court need not be selected in accordance with such constitutional provisions. This bill is not intended to change the result in the Glass case, but is intended by changing the titles of those who preside in the Housing Court to improve the stature of such officers and thereby improve the stature and effectiveness of the entire court.” A further amendment to CCA 110 (e) designated Housing Judges as "duly constituted judicial officers” (L 1984, ch 528), however, on approving such legislation Governor Cuomo stated it was designed to clarify the nature of the 1978 amendment (supra) which changed the title of the position from "hearing officer” to "housing judge” and was not meant to confer any additional jurisdiction, powers or benefits on persons holding such positions (see, 1984 McKinney’s Session Laws of NY, Governor’s mem, at 3619).
The term "judge”, in its most extensive sense, includes all *114 officers appointed to decide litigated questions (28 NY Jur 2d, Courts and Judges, § 57, citing Matter of Wheelock, 205 App Div 654). The term "judge” is statutorily defined to include "every judicial officer authorized, alone or with others, to hold or preside over a court of record” (General Construction Law §26). The term "judicial officer” includes any person who exercises functions relating to the judicial branch of our tripartite form of government but is more properly applicable to those persons who exercise judicial functions by way of adjudicating controversies and interpreting laws (18 NY Jur 2d, Civil Servants, § 22). Since the New York City Civil Court is a court of record (Judiciary Law § 2; CCA 102) and Housing Judges are now "duly constituted judicial officers” (L 1984, ch 528) are not Housing Judges, therefore, within the statutory definition of the term "judge”? Are Housing Judges, thus, as plaintiff contends, full-fledged Judges incapable of being appointed by a member of the judiciary?
Courts are not always confined to the mere letter of the law, or to the literal or strict meaning of statutory terminology (Bright Homes v Wright, 8 NY2d 157). "[T]he general rule of construction that a statute, if possible, is to be so construed as to give effect to what appears to have been the true intent of the legislature * * * the primary meaning of words may be enlarged or varied to accomplish this purpose” (Moynahan v City of New York, 205 NY 181, 186). Moreover, it is the duty of the courts to adopt a construction of a statute that will bring it into harmony with the Constitution, if the statutory language will permit (Matter of Seitz v Drogheo, 21 NY2d 181). The terms of a statute are to be interpreted in the light of its legislative history (Matter of Harbolic v Berger, 43 NY2d 102) and the purposes the Legislature sought to accomplish (Rankin v Shanker, 23 NY2d 111).
The legislative intent in changing "hearing officer” to "housing judge” and denominating Housing Judges "duly constituted judicial officers” was clearly only to invest Housing Judges with as much authority and dignity as possible consistent with Glass v Thompson (51 AD2d 69). Neither resulted in any increase of authority so as to require a result different from that which was reached in Glass. Housing Judges remain essentially Referees, an officer of the court appointed to assist it in the performance of its judicial functions. Appointment of such officers by a member of the judiciary has been explicitly indorsed by the courts (Matter of Rosenthal v McGoldrick, 280 NY 11).
*115 Accordingly, plaintiff’s motion is denied, and the defendants’ cross motion and defendant/intervenor’s cross motion are granted on the ground that CCA 110 (f) is constitutional as a matter of law.

 The Laws of 1978 (ch 310) pointed out that nothing contained therein was to be construed as entitling Housing Judges to compensation and retirement benefits equal to that received by Civil Court Judges (see, § 5). The compensation of Civil Court Judges is an annual salary of $71,000 while the annual salary of Housing Judges is $66,250 (see, L 1984, ch 986, §§ 8, 14, respectively).