OPINION OF THE COURT
 

 Smith, J.
 

 The principal issues presented are (1) whether Housing Court Judges may hold over after the expiration of their five-year term and (2) whether Housing Court Judges are subject to the reappointment authority of the Chief Administrator of the Courts.
 

 I
 

 Jack Dubinsky and Emanuel Haber were originally appointed to five-year terms as Housing Judges on July 23, 1981 and reappointed to second five-year terms on July 23, 1986. Their second terms expired on July 22, 1991. However, because respondents had not yet completed their investigations of the qualifications of Housing Judges Dubinsky and Haber
 
 *331
 
 for a third term, respondent Silbermann, the Administrative Judge of the Civil Court of the City of New York, issued letters extending their terms as Housing Judges through September 23, 1992.
 

 Harriet George was originally appointed to a five-year term as Housing Judge on April 1, 1977, reappointed to a second five-year term on April 1, 1982, and reappointed to a third five-year term on April 1, 1987. Housing Judge George’s third term expired on March 31, 1992. Because respondents had not yet completed their investigations of Housing Judge George’s qualifications for a fourth term, respondent Silbermann issued letters extending her term as Housing Judge through September 23,1992.
 

 On July 14, 1992, petitioners commenced this proceeding in the Appellate Division, pursuant to CPLR article 78, seeking judgment prohibiting respondents from allowing Housing Judges Dubinsky, Haber and George to continue to sit as Housing Judges, directing respondents to remove them from their positions, and prohibiting their reappointment to new terms unless they were appointed in the same manner as new Housing Judges were appointed. Approximately two weeks later, on August 4, 1992, respondents reappointed Housing Judges Dubinsky, Haber and George as Housing Judges for five-year terms.
 

 Petitioners then served an amended petition, essentially seeking the same relief as their original petition. The Appellate Division denied petitioners’ application and dismissed the petition, without opinion. Petitioners appeal, pursuant to leave granted by this Court. Petitioners argue that Housing Court Judges may not hold over after the expiration of their five-year terms; that respondents lacked authority to apply the reappointment process to applicants whose terms as Housing Court Judges had expired; and that the Civil Court Act mandates that reappointment decisions be made by the Administrative Judge of the Civil Court, not by the Chief Administrator of the Courts.
 

 II
 

 Chapter 982 of the Laws of 1972 amended the New York City Civil Court Act (CCA) by inserting a new section 110 to establish the Housing Part of the Civil Court of the City of New York. CCA 110 (f) provided for the appointment of "hearing officers” by the Administrative Judge of the Civil
 
 *332
 
 Court from a list of persons found qualified by the "advisory council for the housing part.”
 

 In
 
 Glass v Thompson
 
 (51 AD2d 69), the Appellate Division held constitutional the appointment of Hearing Officers to preside over nonjury trials in the Housing Part of the Civil Court. The Court suggested that although Hearing Officers were able to preside over housing matters and exercise judicial functions, their office was distinct from that of a Judge of the Civil Court. Since Judges of the Civil Court are elected or appointed in accordance with article VI of the State Constitution, the Court in
 
 Glass
 
 determined that attorneys with special expertise in housing matters who preside over proceedings in the Housing Court need not be selected in accordance with constitutional provisions because as Hearing Officers they are essentially Referees, that is, nonjudicial officers of the court appointed to assist it in the performance of its judicial functions
 
 (Glass v Thompson,
 
 51 AD2d, at 74,
 
 supra).
 

 CCA 110 was amended by chapter 310 of the Laws of 1978 to change references to "hearing officers” of the Housing Part to "housing judges.”
 
 [1]
 
 The intent of the Legislature in changing the title of Hearing Officer to Housing Judge was to improve the stature of the officers who presided in the Housing Court and thereby improve the stature and effectiveness of the entire court.
 

 Senator Manfred Ohrenstein, Minority Leader and sponsor of the Senate bill, in his memorandum in support of the legislation, explicitly stated that it was not the intent of this bill to change the result in
 
 Glass v Thompson.
 
 Then Governor Hugh L. Carey, in his memorandum approving the legislation, acknowledged that the intent of the legislation was to "provide a change in nomenclature from Hearing Officer to Housing Judge in an effort to foster respect and establish the decorum needed in a judicial proceeding” (Bill Jacket, L 1978, ch 310). Section 110 was amended a second time in 1984 in relation to Housing Judges, to provide that Housing Judges
 
 *333
 
 are "duly constituted judicial officers” (L 1984, ch 528). Governor Mario Cuomo stated that the amendment was intended to clarify the nature of the 1978 amendment. It was not intended "to confer any additional jurisdiction, powers or benefits” on Housing Judges.
 
 (See,
 
 Governor’s Mem approving L 1984, ch 528,1984 McKinney’s Session Laws of NY, at 3619.)
 

 It is clear from this history that the legislative amendments to CCA 110 did little more than change the title of Hearing Officer to Housing Judge, with the 1984 amendment clarifying the intent of the 1978 amendment. The effect of the amendments was not a delegation of new and different powers or change in status. The nature and duties of the position were not changed from "nonjudicial” when the title was "Hearing Officer” to "Judicial” as "Housing Judge.” "Housing Judges” remain essentially a form of "referee”, nonjudicial officers of the court, appointed to assist the Judges of the Civil Court in the performance of their judicial functions
 
 (Glass v Thompson,
 
 51 AD2d 69, 74,
 
 supra).
 

 As the 1978 and 1984 amendments to the Civil Court Act did not intend to confer any additional benefit, status or privilege upon Housing Judges, so, too, the statute did not intend Housing Judges to be judicial officers within the meaning of Public Officers Law § 5.
 
 [2]
 
 Judicial officers cannot hold over under section 5 of the Public Officers Law but other officers, including Referees, can. Since Hearing Officers were previously not prohibited from holding over after their terms had expired, the same applies to Housing Judges, since only their title and not the nature of their position has changed.
 

 Ill
 

 CCA 110 (f), provides for the appointment of Housing Judges and sets forth the criteria required. This appointment is by the Administrative Judge from a list of qualified applicants compiled by the Advisory Council for the Housing Part. The Advisory Council is made up of 14 individuals from various backgrounds who conduct initial prescreening interviews and
 
 *334
 
 evaluations of applicants.
 
 [3]
 
 In compiling this list, the Advisory Council considers "training, interest, experience, judicial temperament and knowledge of federal, state and local housing laws and programs” (CCA 110 [f]).
 

 CCA 110 (i) provides for reappointment of Housing Judges as follows:
 

 "Housing judges shall have been admitted to the bar of the state for at least five years, two years of which shall have been in active practice. Each housing judge shall serve full-time for five years. Reappointment shall be at the discretion of the administrative judge and on the basis of the performance, competency and results achieved during the preceding term.”
 

 Petitioners contend that the reappointment of the three Housing Judges was improper under CCA 110 (i), arguing that once the Housing Judges’ term of office was up, they were no longer Housing Judges for purposes of reappointment and were therefore required to apply through the new appointment process. This argument is not supported by the statute. The statute, CCA 110 (i), does not require that Housing Judges be reappointed "before” their term has expired. The incumbent Housing Judges in this case continued to be Housing Judges until they were reappointed because they were lawfully holding over and there was no vacancy in the office or lapse in their tenure. Therefore, under these circumstances, there was no need to go through the original screening process.
 

 Alternatively, appellants argue that even if the reappointment of the three Housing Judges was proper under CCA 110 (i), the reappointments were nonetheless void because the Chief Administrator rendered the decision to reappoint and not the Administrative Judge as expressly provided by the statute.
 

 Notwithstanding that the Civil Court Act provides for appointment and reappointment of Housing Judges by the Administrative Judge of the Civil Court (CCA 110 [f], [i]), State Constitution, article VI, § 28 expressly vests the Chief Administrator, on behalf of the Chief Judge, with the broad power to
 
 *335
 
 supervise the administration and operation of the Unified Court System.
 
 [4]
 
 5The powers of the Chief Judge are said to be "complete” and may be exercised fully by the Chief Administrator on behalf of the Chief Judge
 
 (see, Corkum v Bartlett,
 
 46 NY2d 424, 428-429). Similarly, 22 NYCRR 80.1 (b) (3) states that among the powers and duties of the Chief Administrator is the power to appoint and remove all nonjudicial officers and employees
 
 [5]
 

 (see, Durante v Evans,
 
 94 AD2d 141, 144,
 
 affd for reasons stated by App Div
 
 62 NY2d 719).
 

 Although the title of Hearing Officer has been changed to Housing Judge, the nature of the position has not changed. The legislative amendments meant only to change the title of the position, without conferring any additional benefit, status, authority or privilege upon it. Housing Judges are still "nonjudicial officers of the court,” as the Court in
 
 Glass v Thompson
 
 (51 AD2d, at 74,
 
 supra)
 
 determined. As such, they are subject to the constitutional appointment power of the Chief Administrator, notwithstanding CCA 110. Since the appointment powers of the Chief Administrator flow from the State Constitution, they cannot be abrogated by statute. Thus, although the New York City Civil Court Act provides that the Administrative Judge has the power of appointment and reappointment of Housing Judges, it is the Chief Administrator who in fact has the ultimate power of appointment and reappointment. The New York City Civil Court Act must be read together with, and be applied consistently with, the Constitution.
 

 Accordingly, the judgment of the Appellate Division should be affirmed, with costs.
 

 Judges Simons, Titone, Bellacosa, Levine and Ciparick concur; Chief Judge Kaye taking no part.
 

 Judgment affirmed, with costs.
 

 [1]
 

 . (L 1978, ch 310.) With the change in title of the Hearing Officer, the legislative amendment also changed references to Judges of the Housing Court. References to actual Judges of the Housing Court were clarified by the simultaneous addition of the terms "civil court” and "acting civil court” before the term "judge” as it previously existed in the statute (L 1978, ch 310, § 4). This was an attempt to distinguish between Judges elected under the provisions of article VI of the State Constitution and Hearing Officers, who were merely receiving a change in title.
 

 [2]
 

 . Public Officers Law §5 in pertinent part provides: "Every officer except a judicial officer * * * having duly entered on the duties of [the] office, shall * * * hold over and continue to discharge the duties of [the] office after the expiration of the term for which he shall have been chosen, until his successor shall be chosen and qualified; but after the expiration of such term, the office shall be deemed vacant for the purpose of choosing his successor.”
 

 [3]
 

 . This council was established pursuant to CCA 110
 
 (g)
 
 to assist in the initial
 
 selection of
 
 new Housing Judges. The evaluation and prescreening of new applicants, followed by recommendations by the Advisory Council is important, as these individuals are new to the Unified Court System and court administrators are generally unfamiliar with their backgrounds.
 

 [4]
 

 . Article VI, §28 (b) of the State Constitution provides: "The chief administrator, on behalf of the chief judge, shall supervise the administration and operation of the unified court system. In the exercise of such responsibility, the chief administrator of the courts shall have such powers and duties as may be delegated to him by the chief judge and such additional powers and duties as may be provided by law.”
 

 [5]
 

 . 22 NYCRR 80.1, provides: "(b) * * * [T]he Chief Administrator shall: "(3) appoint and remove, upon nomination or recommendation of the appropriate administrative judge * * * all nonjudicial officers and employees”.