D'Ambra v D'Ambra (2024 NY Slip Op 01291)

D'Ambra v D'Ambra

2024 NY Slip Op 01291

Decided on March 13, 2024

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on March 13, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ROBERT J. MILLER, J.P.
JOSEPH J. MALTESE
WILLIAM G. FORD
LOURDES M. VENTURA, JJ.

2020-05559
 (Index No. 17054/14)

[*1]Ronald G. D'Ambra, respondent,
v
Jindi T. D'Ambra, appellant.

Peter C. Lomtevas, Brooklyn, NY, for appellant.
Mace H. Greenfield, Garden City, NY, for respondent.

DECISION & ORDER
In an action for a divorce and ancillary relief, the defendant appeals from stated portions of a judgment of divorce of the Supreme Court, Queens County (William A. Viscovich, J.), entered March 20, 2020. The judgment of divorce, insofar as appealed from, upon a decision of the same court dated October 31, 2019, made after a nonjury trial, inter alia, (1) failed to award maintenance to the defendant, (2) failed to award the defendant a distributive share of the plaintiff's pension, (3) awarded the defendant only 15% of the equity in the marital residence, (4) after deducting the sum of $45,000 from the full value of a Florida rental property as a credit to the plaintiff, awarded the defendant only 15% of the remaining value, and (5) awarded the plaintiff an equitable distribution credit in the sum of $150,000.
ORDERED that the judgment of divorce is affirmed insofar as appealed from, with costs.
The plaintiff and the defendant were married on January 23, 2007. They thereafter purchased a condominium in Flushing, which served as the marital residence, and a rental property in Florida. Although the parties have no children together, the defendant's adult son from a prior relationship began residing with them in 2011. During the marriage, the plaintiff paid all marital expenses and the defendant did not earn an income.
In May 2014, the plaintiff commenced this action for a divorce and ancillary relief. Prior to trial, the defendant failed to file a revised statement of net worth and the Supreme Court, therefore, precluded her from offering testimony or other evidence with regard to her income or expenses. Following a nonjury trial, the court issued a decision, inter alia, declining to award the defendant maintenance. With respect to the equitable distribution of property, the court found that the plaintiff was entitled to a credit of $150,000 due to a fraud perpetrated upon him by the defendant relating to a transfer of funds to one of her family members in China. Since the credit to the plaintiff was in excess of any amount otherwise owed to the defendant, the court concluded, among other things, that she was not entitled to an award of any assets or funds. On March 20, 2020, the court entered a judgment of divorce, consistent with its decision, on the ground of irretrievable breakdown of the parties' relationship for a period of at least six months. The defendant appeals from stated portions of the judgment of divorce.
Pursuant to Domestic Relations Law § 170(7), "[a]n action for divorce may be maintained by a husband or wife to procure a judgment divorcing the parties and dissolving the marriage [where] [t]he relationship between husband and wife has broken down irretrievably for a period of at least six months, provided that one party has so stated under oath." This statutory provision, enacted in 2010, is commonly known as New York's "no-fault" divorce law (see Agulnick v Agulnick, 191 AD3d 12, 19). "As the Legislature noted, the intent of no fault divorce was 'to lessen the disputes that often ar[o]se between the parties and to mitigate the potential harm to them . . . caused by the [prior] process'" (Rinzler v Rinzler, 97 AD3d 215, 218, quoting Senate Introducer Mem in Support, Bill Jacket, L 2010, ch 384 at 13). "Similarly, the Governor stated, in signing the legislation, that its intent was to 'reduce litigation costs and ease the burden on the parties in what is inevitably a difficult and costly process'" (Rinzler v Rinzler, 97 AD3d at 218, quoting Governor's Approval Mem, Bill Jacket, L 2010, ch 384 at 5). "The ease and availability of no fault divorce . . . has had the practical effect of displacing other grounds that may otherwise have been asserted and litigated in many actions" (Agulnick v Agulnick, 191 AD3d at 19).
Even assuming that the defendant did not consent to the ground for divorce, the Supreme Court did not lack subject matter jurisdiction to grant a judgment of divorce pursuant to Domestic Relations Law § 170(7). Contrary to the defendant's contention, "[t]he issue of whether the plaintiff established that the parties' marriage had irretrievably broken down for a period of at least six months . . . concerns the merits of the divorce action, not the court's competence to adjudicate it" (Patouhas v Patouhas, 172 AD3d 1221, 1221). Although the defendant asserts that the plaintiff failed to make the sworn statement required by Domestic Relations Law § 170(7), the record indicates otherwise. Contrary to the defendant's further contention, "the opposing spouse in a no fault divorce action pursuant to Domestic Relations Law § 170(7) is not entitled to litigate the other spouse's sworn statement that the relationship has broken down irretrievably for a period of at least six months" (Trbovich v Trbovich, 122 AD3d 1381, 1382; see Johnston v Johnston, 156 AD3d 1181, 1182; Matter of Motta v Motta, 145 AD3d 560, 561; Hoffer-Adou v Adou, 121 AD3d 618, 619; Palermo v Palermo, 100 AD3d 1453, 1453).
"[M]aintenance is a support payment awarded to assist the less affluent spouse in meeting his or her reasonable needs in light of the predivorce standard of living" (Kaufman v Kaufman, 189 AD3d 31, 70). "Maintenance is intended to be rehabilitative in nature, and thus the function of durational rather than permanent maintenance is to allow the recipient spouse an opportunity to achieve economic independence" (Papakonstantis v Papakonstantis, 163 AD3d 839, 841). "The amount and duration of spousal maintenance is an issue generally committed to the sound discretion of the trial court and each case is to be resolved upon its own unique facts and circumstances" (Silvers v Silvers, 197 AD3d 1195, 1199). "In cases, like this one, commenced prior to amendments to the Domestic Relations Law effective January 23, 2016, factors to be considered [in a maintenance award] include the standard of living of the parties, the income and property of the parties, the distribution of property, the duration of the marriage, the health of the parties, the present and future earning capacity of the parties, the ability of the party seeking maintenance to be self-supporting, the reduced or lost earning capacity of the party seeking maintenance, and the presence of children of the marriage in the respective homes of the parties" (Tuchman v Tuchman, 201 AD3d 986, 991 [citation and internal quotation marks omitted]).
Contrary to the defendant's contention, the Supreme Court providently exercised its discretion in declining to award her maintenance, considering, inter alia, her failure to file a revised statement of net worth and the court's resulting inability to sufficiently evaluate her finances (see O'Brien v O'Brien, 163 AD3d 694, 695; Campbell v Campbell, 72 AD3d 556, 557; Wanker v Samitz, 67 AD3d 1135, 1137; Shortis v Shortis, 274 AD2d 880, 883).
"A marriage has been characterized, among other things, as an economic partnership[,] which upon its dissolution necessitates a winding up of the parties' economic affairs and a severance of their economic ties by an equitable distribution of the marital assets" (Schanback v Schanback, 130 AD2d 332, 341 [citation and internal quotation marks omitted]). "Equitable distribution law does not mandate an equal division of marital property" (Jones v Jones, 182 AD3d 586, 587 [internal quotation marks omitted]). Indeed, "there is no fixed rule that distribution be [*2]equal even in marriages of long duration" (Solomon v Solomon, 307 AD2d 558, 560). Instead, "[t]he equitable distribution of marital assets must be based on the circumstances of the particular case and the consideration of a number of statutory factors. Those factors include: the income and property of each party at the time of marriage and at the time of commencement of the divorce action; the duration of the marriage; the age and health of the parties; the loss of inheritance and pension rights; any award of maintenance; any equitable claim to, interest in, or direct or indirect contribution made to the acquisition of marital property by the party not having title; and any other factor which the court shall expressly find to be just and proper" (Jones v Jones, 182 AD3d at 587-588 [citations and internal quotation marks omitted]). "The trial court is vested with broad discretion in making an equitable distribution of marital property . . . and[,] unless it can be shown that the court improvidently exercised that discretion, its determination should not be disturbed" (Morille-Hinds v Hinds, 169 AD3d 896, 898 [internal quotation marks omitted]). However, "this Court has discretion to determine issues of equitable distribution that is as broad as that of the trial court" (DeVries v DeVries, 35 AD3d 794, 796).
The defendant has failed to establish a basis to disturb the Supreme Court's equitable distribution determination. Contrary to her contention, the court providently exercised its discretion with regard to the equitable distribution of the marital residence in Flushing and the rental property in Florida (see Jones v Jones, 182 AD3d at 588; Arrigo v Arrigo, 38 AD3d 807, 807-808). Moreover, the court's determination as to the purported fraud perpetrated by the defendant—concluding, in effect, that she had wastefully dissipated marital assets, entitling the plaintiff to a credit against the defendant's equitable portion of these marital assets—was also a provident exercise of its discretion, hinging on the court's credibility assessments of the parties (see Silvers v Silvers, 197 AD3d at 1198; Rosen v Rosen, 192 AD3d 710, 712-713; Grabelsky v Handler, 127 AD3d 1141, 1141).
The defendant's remaining contentions are without merit.
MILLER, J.P., MALTESE, FORD and VENTURA, JJ., concur.
ENTER:
Darrell M. Joseph
Acting Clerk of the Court